# DECEMBER, 1934

T. J. Thompson et al. v. Mrs. Emma Kay et al.

No. 6079.

Error to the Court of Civil Appeals for the Tenth District, in an appeal from Limestone County.

---

Miss Alberta Huey, Administratrix, v. Mrs. L. Warner, Guardian.

No. 5773.

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

---

Lee Massey et al. v. Citizens National Bank of Weatherford et al.

No. 5790.

Error to the Court of Civil Appeals for the Second District, in an appeal from Parker County.

---

Mrs. Bertie Gill et al. v. Lila Baird et al.

No. 5885.

Error to the Court of Civil Appeals for the Ninth District, in an appeal from Angelina County.

---

Decided December 12, 1934.
(77 S. W., 2d Series, 201.)

*L. W. Shepperd* and *F. M. Fitzpatrick,* both of Waco, for plaintiffs in error, T. J. Thompson et al.; *Spencer, Rogers & Lewis,* of San Antonio, for plaintiff in error, Miss Alberta Huey; *F. O. McKinsey,* of Weatherford, for plaintiffs in error, Lee Massey et al.; *Tom F. Coleman,* of Lufkin, for plaintiffs in error, Mrs. Bertie Gill et al.

The homestead passes to heirs on the death of parents free from all charges, under the Constitution, Article 16, section 50, except for debts for purchase money, taxes or improvements thereon, and that the property sought to be partitioned being a homestead and the debts with which appellant sought to charge said property not being within one of the three classes named it was error to hold that said property could be charged with the debt. American Bonding Co. v. Logan, 106 Texas, 306, 166 S. W., 1132; Hoefling v. Hoefling, 106 Texas, 350, 167 S. W., 210.

The Court of Civil Appeals erred in holding that the interest of a deceased husband in the property, consisting of a homestead of the said husband and wife, who predeceases him, was *not exempt but subject to execution to satisfy a judgment for*

an ordinary debt against the deceased husband's estate, notwithstanding that an unmarried daughter of the deceased wife and stepdaughter of the deceased husband and a constituent member of the family since she was four years of age, survived and continued to use and occupy the property as a homestead. Anderson v. McGee, 130 S. W., 1041; Greene v. Cass County State Bank, 7 S. W. (2d) 620; Henry v. Brown, 279 S. W., 541.

Where bank took deed of trust while the land mortgaged was the homestead of mortgagor and while his unmarried daughter was making her home with him as a constituent member of the family, the bank had notice at the time that her inchoate homestead rights had attached, and the bank's lien not having been foreclosed in the life time of the mortgagor, the property, at his death, by virtue of the existence of the unmarried daughter as a member of the family and the land still being a homestead, descended to and vested in all the heirs free from the debt of the bank. Robinson v. Seales, 242 S. W., 756, and cases cited above.

Where a widowed daughter and her mother are possessed jointly of a homestead at the time of the death of the mother, the widow, if she elects to remain on the homestead, is entitled to have it set aside to her in a partition of the estate, she having no other homestead and being in possession of the one claimed at the time of the death of her mother and at the time the case was tried. Quintana v. Giraud, 209 S. W., 770; Lacy v. Lockett, 82 Texas, 192, 17 S. W., 916; Krueger v. Wolf, 12 Texas Civ. App., 167, 33 S. W., 663; Youngs v. Youngs, 26 S. W. (2d) 192; 3 Texas Jur., 181, par. 119.

*P. O. French,* of Fairfield, for defendants in error, Mrs. Emma Kay et al.; *Hull & Oliver,* of San Antonio, for defendant, Mrs. L. Warner, Guardian; *Grindstaff, Zellers & Hutcheson,* of Weatherford, for defendants in error, Citizens National Bank of Weatherford et al.; *J. H. Collins* and *R. E. Fairchild,* both of Lufkin, for defendants in error, Lila Baird et al.

Where widow dies, leaving no minor children, nor unmarried daughters nor any constituent of a family, her estate, consisting only of her homestead in her separate property, passes to her heirs charged with the debts of the deceased, including the expenses of her burial. Moore v. Moore, 31 S. W., 532; Patterson v. Allen, 50 Texas, 23; Holland v. Swilley, 268 S. W., 758.

The undisputed facts showed that party claiming homestead was a stepdaughter of deceased, and was not a daughter and was no blood kin to him. She was therefore not entitled to

have the property in controversy exempt to her as a homestead and have same withdrawn from the administration, under R. S., 1925, Article 3485, as she was not one of the persons named in said article. Roots v. Robertson, 93 Texas, 365, 55 S. W., 308; Ross v. Martin, 104 Texas, 558, 140 S. W., 432; Wilkins v. Briggs, 107 S. W., 135.

Where wife died intestate, leaving surviving husband and five children, one of whom was an unmarried daughter, the surviving husband has the legal right to mortgage his interest in the community homestead and if said mortgage contains a power of sale, it is not revoked by his death but remains in full force and effect and is not subject to cancellation by the unmarried daughter in order that she might have the property covered thereby set aside to her as an exempt homestead. Slay v. Gose, 233 S. W., 348; Spencer v. Schell, 107 Texas, 44, 173 S. W., 867; Lacy v. Rollins, 74 Texas, 566, 12 S. W., 314; Hedeman v. Newnom, 109 Texas, 472, 211 S. W., 968.

The homestead is not protected in favor of an unmarried adult daughter from partition among the heirs, the only person thus protected being the surviving husband or wife and minor children. White v. Small, 22 Texas Civ. App., 318, 54 S. W., 915 (error refused by Supreme Court); Quintana v. Giraud, 209 S. W., 770.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The four above styled and numbered cases present important questions of homestead law. The first three involve the relative rights of creditors and heirs in homestead property, about which much has been written in the opinions of the Supreme Court of Texas, from the earliest date to the present. It must be candidly admitted that declarations of law on this subject contained in opinions by eminent justices, can not be reconciled with declarations in other opinions by justices of like eminence. The principal purpose of this opinion is to make clear and plain the rules governing the relative rights of creditors and of heirs in homestead property in so far as such rules are involved in the correct determination of the first three cases. They cover a wide range.

The fourth case involves not the sale of a decedent's homestead for debts; but the conditions under which such homestead is subject to partition among heirs. So often have the Court's opinions referred to this question, in cases involving rights of creditors and heirs in homesteads, that we have deemed it not inappropriate to group the fourth case with the other three.

To secure clarity, each case will be stated separately and the questions it presents will be decided separately.

In the first cause, numbered 6079, styled T. J. Thompson et al. v. Mrs. Emma Kay et al., concise statements of the nature of the suit, of the controlling facts, of the judgments below, and of the questions for decision by the Supreme Court are found in the argument filed by the attorneys for plaintiffs in error as follows:

"Defendants in Error, Mrs. Emma Kay and husband instituted this suit, in the District Court of Limestone County, against T. J. Thompson, B. P. Thompson, Mittie Watkins and husband, F. M. Watkins, and M. E. Bloom and husband, S. L. Bloom, to partition a tract of 82½ acres of land, which said tract of land constituted the entire estate of Mrs. M. A. Thompson, deceased. The same was her separate property. She was a widow at the time of her death and occupied the same as her homestead. The plaintiffs in error, T. J. Thompson, B. P. Thompson, Mittie Watkins (wife of F. M. Watkins) and M. E. Bloom (wife of S. L. Bloom), together with defendant in error, Mrs. Emma Kay (wife of L. T. Kay), constituted the sole and only surviving heirs of the said Mrs. M. A. Thompson, deceased, each and all of whom were adults and none of whom were unmarried daughters at the time of the death of the deceased; the said Mrs. M. A. Thompson, died intestate and said Mrs. Emma Kay, Mrs. Mittie Watkins, Mrs. M. E. Bloom, T. J. Thompson and B. P. Thompson, were her children and sole and only heirs at law, and as such inherited title thereto from the said Mrs. M. A. Thompson, deceased, in equal portions. No administration was ever had upon the estate of said deceased, nor was there any necessity therefor. The only debt against the estate of said deceased was for the expense of the burial of the deceased, amounting to the sum of $211.50. The defendant in error, Mrs. Emma Kay had paid $154.00 thereof; the plaintiff in error, Mrs. M. E. Bloom paid $42.50 thereof, and the plaintiff in error, T. J. Thompson paid $15.00 thereof.

"The defendants in error, Mrs. Emma Kay, joined by her husband, L. T. Kay, sought to charge said 82½ acres of land with said burial expense and fix a lien against the same. They also sought as an incident of partition, to establish said debt and have the same satisfied out of said property in equitable portions. They also alleged that said land was incapable of partition in kind, prayed the court to appoint a Receiver therefor, have the same sold and apply the proceeds of said contemplated sale, first, to the satisfaction of the balance remaining unpaid of said funeral bill, and the remainder, if any, of said

proceeds, to be divided pro rata among the respective joint owners of said property.

"The trial was before the court, without the intervention of a jury. The court after hearing the evidence, ordered the land partitioned, and appointed commissioners for that purpose, and held that said land, being the homestead of the deceased, Mrs. M. A. Thompson, was not subject to the payment of said funeral expense, and entered judgment accordingly.

"The defendants in error prosecuted an appeal to the Court of Civil Appeals for the Tenth Supreme Judicial District at Waco, and that court on June 4th, 1931, reversed and remanded the case on the homestead question, and held in effect that upon the death of the deceased, Mrs. M. A. Thompson, she having left no surviving minor child or unmarried daughter, her separate property, occupied by her as a homestead, went to her heirs charged with burial debts, and reversed and remanded the case."

To the above statement we deem it necessary to add only that there is no dispute that Mrs. M. A. Thompson died in 1929, and that the facts plead by defendants in error were found by the trial court to be true. After stating that the proper preliminary steps had been taken, and that a writ of error was allowed to review the judgment of the Court of Civil Appeals, the attorneys for plaintiffs in error say:

"Therefore, the question to be decided in this case is: 'All of the children of Mrs. M. A. Thompson, deceased, being of legal age and there being no unmarried daughters among them, did the homestead of said deceased (she being a widow and said homestead being her separate property) pass to the children (they being her sole and only heirs at law) charged with the funeral bill in question?'"

The Court of Civil Appeals determined the above question in the following words in an opinion by Chief Justice Gallagher, to-wit:

"The determination of the issue under consideration depends upon whether the homestead exemption of said tract of land terminated at the death of Mrs. Thompson, or whether it continued for the protection of the same after it passed by inheritance to the parties to this suit. The test prescribed by our Supreme Court for determining whether the homestead exemption of property continues after the death of the owner is whether such owner left surviving a husband or wife, a minor child, or an unmarried daughter residing with the family. * * *

"Applying the test so prescribed by our Supreme Court, we are constrained to hold that the homestead character and exemption of said tract of land ceased at Mrs. Thompson's death, and that it was subject in the hands of the parties to this suit to the indebtedness incurred by appellants in giving her decent burial. It follows that the court erred in sustaining the exception to so much of appellants' petition as set up a claim for money expended by them in providing such burial, and sought to charge the same upon the land to be partitioned." Kay v. Thompson, 40 S. W. (2d) 884.

In order to clearly understand the contention of the adult heirs, other than unmarried daughters that the homestead should be held *still* free from administration to pay the deceased owner's debts, as it was free from execution for such debts during his lifetime, it is necessary to set forth the sections of the Constitution and articles of the statutes which this Court has held to determine the question.

The sections of the Constitution of 1876 involved are Section 52 of Article XVI providing for the descent and partition of the homestead, and that part of Section 50 of the same Article, reading:

"The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead."

Since the revision of 1879, our statutes have contained what was article 2008 of that revision, which reads as follows:

"The exempted property, other than the homestead, or any allowance made in lieu thereof, shall be liable for the payment of the funeral expenses, and the expenses of last sickness of deceased, when presented within the time prescribed therefor; but such property shall not be liable for any other debts of the estate." Art. 2061, R. S., 1895; Art. 3428, R. S., 1911; Art. 3500, R. S., 1925.

The statute most directly dealing with the exemption of the homestead from administration has undergone no material change, save as stated in the next paragraph of this opinion, since it was adopted as section 112 of the Probate Act of March 20, 1848, becoming Article 1221 of Hartley's Digest of the laws of Texas, page 390; section 125, Chapter LXXXIV, Acts 15th Legislature, approved August 9, 1876, Vol. 8, Gammel's Laws

of Texas, page 963; Article 1817, R. S., 1879; Article 1869, R. S., 1895; Article 3235, R. S., 1911; Article 3314, R. S., 1925. One sentence was changed in Article 3314, R. S., 1925, but the purpose of the codifiers and the Legislature was evidently merely to state with greater brevity what one sentence had always stated.

The material change was in force only for the brief period following the enactment of Section 26 of the Act of August 15, 1870, until such section was superseded by section 125 of the Act approved August 9, 1876, in the precise language of former section 112 of the Act of March 20, 1848.

Section 26, during its brief existence, read:

"The property reserved from forced sale by the constitution and laws of this state, or its value, if there be no such property, does not form any part of the estate of a deceased person, *where a constituent of the family survives.*" (Italics ours). Sec. 26, Act of August 15, 1870, "Prescribing the Mode of Proceeding in District Courts in Matters of Probate"; Art. 5487, Vol. 2, Paschal's Ann. Digest of the Laws of Texas, p. 1147.

Since Article 1817, most plainly dealing with the relative rights of heirs and creditors in the homesteads of decedents was first authoritatively construed in 1885, in the light of present constitutional provisions, we shall refer to it as it then was numbered in the Revised Statutes of 1879, and we set it out as follows:

"Art. 1817. When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; but all of such estate, whether devised or bequeathed or not, *except such as may be exempted by law from the payment of debts,* shall *still* be liable and subject in their hands to the payment of the debts of such tetator or intestate; and whenever a person dies intestate all of his estate shall vest immediately in his heirs at law, but *with the exception aforesaid* shall *still* be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate *as it existed at the death of the testator or intestate, with the exception aforesaid;* and it shall be the duty of such executor or administrator to recover possession of and hold such estate in trust to be disposed of in accordance with law." (Italics ours).

In Givens v. Hudson, 64 Texas, 471, decided October 13th, 1885, the opinion states that, on an agreed statement of facts, the *sole* question for decision was correctly stated by counsel for the Smith heirs, who was the father of the writer hereof, in these words:

"The heirs of George Smith being adults when he died, and his estate exempt *during his life-time,* from the payment of his debts, does said exempted estate go to the adult heirs freed from the claim of general creditors, or is it subject to the payment of debts by reason of the heirs-at-law being adults?"

■ After determining that section 52 "does not attempt to declare under what circumstances property used during the lifetime of a deceased person as a homestead shall be exempted from forced sale to satisfy the debts against the estate," the Court, consisting of Justices Willie, Stayton, and Robertson, speaking through Mr. Justice Stayton, held:

"We will have to look to section 50, article 16, of the Constitution to ascertain when such property is exempted from forced sale. It declares that: 'The homestead of a *family* shall be and is hereby protected from forced sale for the payment of all debts, except' etc.

"The statute declares the same thing, no more and no less (R. S. 2335); and it indicates as does the Constitution, what persons may be considered the constituents of a family after the death of the husband or wife (R. S. 1993-2009), and among those are not found adult children other than 'unmarried daughters remaining with the family of the deceased,' * * *

"Article 1817, Revised Statutes, in effect, simply declares that all property which deceased persons shall leave shall vest in their devisees or legatees in cases of testacy, and in their heirs in cases of intestacy, but shall be subject to the payment of the debts of the deceased persons, except so much of the property so left 'as may be exempted by law from payments of debts:' but this article does not determine the circumstances or conditions which will give the exemption, and we are again driven to the laws which declare in whose favor the exemption shall exist, and these, in every instance, base the exemption on the *status* or condition of the recipient of the benefit thereby confered, and not upon the *status* or condition of some former owner.

"The thing is not exempted to the child or widow because it was exempted to the father or husband who was the head of the family, but because the child or widow was and remains a constituent of the family; and when this relation ceased before

the death of the intestate, there is nothing in reason, nor in the letter or spirit of the law, which can give the exemption to one not sustaining such a family relation." Givens v. Hudson, 64 Texas, 472 to 474.

Five years later, the same question was raised in a case involving a community homestead of a family and a creditor of the community, when the husband first died intestate, survived by his wife and minor children and adult children, including unmarried daughters, and later the wife died on the homestead, survived by minor children and adult children, including unmarried daughters. Here the heirs claimed the homestead was exempt from administration under article 1817 and under sections 50 and 52 of article 16 of the Constitution. The holder of the community debt asserted that he was at least entitled to subject the undivided interests in the homestead of the adults other than unmarried daughters to the payment of his debts.

In holding the entire homestead exempt from payment of the community debt, a majority of the Supreme Court, then composed of Justices Stayton, Henry, and Gaines, speaking through Mr. Justice Gaines, announced:

*"In the previous Constitutions of the State the disposition of the homestead after the death of the owner was left wholly to the wisdom of the Legislature. It is so also in the present Constitution, except as to the manner of its descent and the use reserved to the surviving spouse and the minor children.* The language 'shall descend and vest as other property of the deceased' was employed, we think, to determine the persons who should take and their respective interests, but not the conditions which were to be imposed upon the inheritance. It was not, in our opinion, intended that the homestead should descend charged with the payment of debts as other property.

\* \* \*

"The leading object of the provisions of the Revised Statutes upon this subject was to prescribe that the exempt property should not be subject to sale by the order of the Probate Court for the payment of debts generally, *in the event either husband or wife, or a minor child or an unmarried daughter survived the owner.* This object is clearly manifested by other articles of the Revised Statutes relating to the administration of the estate of deceased persons. Article 1817 provides that when a person dies his property shall descend to his heirs, but also provides that 'all of such estate \* \* \* except such as may be exempted by law from the payment of debts shall still be liable and subject in their hands to the payment of the debts of such \* \* \* intestate.' Article 2007 prescribes that 'the home-

stead shall not be liable for the payment of any of the debts of the estate except for the purchase money thereof, the taxes due thereon, or for work and material used in constructing improvements thereon,' etc. *This is to be construed in connection with and to be limited by article 2002, which applies only to homesteads of decedents who leave a constituent of the family surviving.* Givens v. Hudson, 64 Texas, 471." Zwernemann, Guardian, v. Von Rosenberg, 76 Texas, 522, 525, 527. (Italics ours).

Chief Justice Stayton concurred in the opinion of the majority in adhering to the holdings in Givens v. Hudson, supra, interpreting article 1817 and sections 50 and 52 of Article 16 of the Constitution, dissenting from the single conclusion that adult heirs other than unmarried daughters took their interests freed from debts of the parent owners of the homestead. In this dissenting opinion is found an instructive elaboration of the grounds upholding the decision in Givens v. Hudson, supra.

In Childers v. Henderson, 76 Texas, 664, 667, 668, 13 S. W., 481, in an opinion by Mr. Justice Henry, the Givens and Zwernemann cases were again followed. To that extent, Justices Stayton and Gaines concurred, but Mr. Justice Stayton again dissented from the decision that where the father's homestead on his death passed to adult children and an unmarried daughter, remaining with her father on the homestead, that any other interest should be withdrawn from administration save that inherited by the unmarried daughter. 76 Texas, 668, 669.

█ The unanimous decisions in Givens v. Hudson, supra, and the majority conclusion in Zwernemann, Guardian, v. Von Rosenberg, and Childers v. Henderson, construing the Constitution and former article 1817, as rendering the homestead of a parent subject to administration to pay the parent's debts, when the homestead descends to heirs who are adults other than unmarried daughters, have been consistently followed by the Supreme Court for nearly half a century, whenever that precise question has been presented, despite some five changes in personnel of the Supreme Court in whole or in part. Zwernemann, Guardian, v. Von Rosenberg, 76 Texas, 522, 13 S. W., 485; Roots v. Robertson, 93 Texas, 365, 55 S. W., 308; Ross v. Martin, 104 Texas, 558, 141 S. W., 518; American Bonding Company of Baltimore v. Logan, 106 Texas, 306, 166 S. W., 1132; Milner v. McDaniel, 120 Texas, 160, 36 S. W. (2d) 992. The Courts of Civil Appeals decisions have also been almost wholly in line with said three decisions. Stephenson v. Marsalis, 11

Texas Civ. App., 162, 33 S. W., 383; Greene v. Cass County State Bank, 7 S. W. (2d) 620.

The law as declared in the Givens, Zwernemann, and Childers cases has been followed so often as settled law, and the whole question is so completely and ably reviewed in the case of American Bonding Co. of Baltimore v. Logan in 106 Texas, page 306, that this discussion would not have been so extensive save for the frequent insistence of counsel that the question should be re-opened, citing declarations in opinions of the Supreme Court early and late.

A few examples of such declarations will be given.

In Sossaman v. Powell, 21 Texas, 665, 666, decided under the statute appearing as 1817 in the Revised Statutes of 1879, the Court through Chief Justice Hemphill declared:

"An administrator has but little concern with the homestead of the deceased. In no event can it be converted to the use of creditors. They have no interest in such property. The suit by an administrator is presumed to be principally for the benefit of creditors. This consideration does not hold in suits for homestead property, the creditors being in fact wholly excluded. The lands in question are community property. As a homestead they were exempted from debts during the life of the husband, at his death they are still exempt. They vest exclusively one-half in the widow and the other half in the children of the deceased. They are entitled to the whole and not such portion as may remain after paying the charges against the community." (Italics ours).

\*   \*   \*   \*   \*   \*

"So that in fact the *widow and heirs* are the only persons who have any interest in the lands. This would have been true in relation at least to the widow's half of this community estate without the Statute; but with it, all difficulties vanish and the homestead is *continued* to the widow and children *as it existed in the life-time of the husband.*" (Italics ours).

In Carter v. Randolph, 47 Texas, 378, 381, in a case involving exemption of the homestead from forced sale, under Section 15, Article XII of the Constitution of 1869, 4 Sayles' Texas Statutes, p. 451, and the statute of 1870, the Court through Chief Justice Roberts said: "The law attaches to it (the homestead) that effect and consequence (viz.: exemption from administration to pay decedent's debts) from it having been made *and continuing to be the* homestead *at the time of his death.*"

Similar language appears in the opinions of the present Court in Cline v. Niblo, 117 Texas, 474, 481, 8 S. W. (2d) 633; Ward v. Hinkle, 117 Texas, 566, 578, 8 S. W. (2d) 641; and

Johnson v. Hampton, 117 Texas, 580, 582, 8 S. W. (2d) 640. These three cases are especially relied on by the attorneys for plaintiffs in error for a reversal of the judgment of the Court of Civil Appeals. In Cline v. Niblo, supra, the owner of the homestead was a widow *leaving among her heirs an unmarried daughter and two minor children, residing with their mother on the homestead at the date of her death.* 117 Texas, 476, 477. In holding the widow's homestead exempt from administration to pay her general debts, *while subject to a lien debt,* the Court cites the statute interpreted in Givens v. Hudson, supra, and section 50 of Article 16 of the Constitution and the cases of Zwernemann v. Von Rosenberg, supra, and American Bonding Co. v. Logan, supra.

In Ward v. Hinkle, supra, wherein the heirs to the homestead of Ben and Louisa Ward successfully vacated a sale of such homestead through administration to pay an ordinary judgment rendered in the justice's court, among the material facts stated in the opinion are the following:

"Ben Ward died in 1892 intestate, and no administration was had on his estate. After his death, *his wife,* Louisa, continued to reside on the old homestead *with her children,* who *remained with her, including an unmarried daughter, until her death.* When Louisa died there were still living seven children of herself and Ben Ward, and a number of children of Amanda Lee and Neeley Williams, two of the original Ward children, who had married, had families, and died. These grandchildren were many in number, the names of whom appear in the petition, but it is unnecessary to here set them out in this opinion."

What was actually presented for decision and actually decided in Ward v. Hinkle in no wise conflicts with the decision in Givens v. Hudson, supra, and the many decisions approving and following it.

In the case of Johnson v. Hampton, 117 Texas, 580, the opinion recites that twenty-five acres of land constituted "the homestead of Angelina and Grant Collins at the time of their respective deaths, which were in 1918 and 1919, and had been their homestead since 1889. Grant and Angelina Collins both died intestate, leaving the plaintiffs in error as their sole heirs. Sometime after the death of the last survivor, Grant Collins, J. R. Hampton was appointed administrator of the community estate of Grant and Angelina Collins. Several claims were filed in the probate court, and thereafter by order of the court Hampton, as administrator, sold the land to the defendant in error, his brother, in order to raise funds for the payment of debts. At the time of this administration and for many years

prior thereto, *Palina Johnson, one of the heirs, was living upon and occupying the entire 25 acres. The land was in fact the separate property of Angelina Collins, but it was the homestead of both Grant and Angelina.*" (Italics ours). The record shows that Palina Johnson was permanently separated from her husband and lived on the homestead since prior to her father's death to the date of the trial in the district court, but she was not divorced until 1920, after the death of both parents. The property was conveyed to Angelina Collins while she was married; but, the deed did not show on its face any fact making the land her separate estate. The trial court found that the buyer at the probate sale was an innocent purchaser and therefore took title. The suit was by the purchaser against Palina Johnson and the other heirs of Grant and Angelina Collins. The Supreme Court rendered judgment for the heirs. Since the property was Angelina Collins' separate estate, and since she left a husband surviving her, it necessarily followed under the doctrine of Givens v. Hudson and the cases following it that title to the entire homestead passed to her heirs freed of her separate debts or of community debts because her husband survived her, unless title passed to an innocent purchaser, because of the title being apparently in the community. The same thing is just as true of a sale for any debt of the surviving husband created after Angelina's death. Cameron v. Morris, 83 Texas, 14, 18 S. W., 423; Ross v. Martin, 104 Texas, 558, 141 S. W., 518. There could be no innocent purchaser of this land, because the undisputed evidence showed that Palina Johnson was in possession of her mother's former homestead at the date of all the administration proceedings, claiming same for herself and the other heirs under inheritance as a part of the separate estate of Angelina Collins. Collum et al. v. Sanger Brothers, 98 Texas, 162, 82 S. W., 459; Ramirez v. Smith, 94 Texas, 184, 59 S. W., 258. It follows that no other correct judgment could have been rendered than that which was rendered for the heirs of Grant and Angelina Collins.

In the Supreme Court cases, where declarations are made seeming to deny the rights of creditors to have homesteads of decedents sold to pay their general, unsecured debts, as against the claims of adult heirs other than unmarried daughters, under existing constitutional and statutory provisions, no such question was necessarily presented for decision.

Speaking of changing a previous construction of statutes relating to the widow's allowances from the estate of her deceased husband, this Court, in an opinion of Mr. Justice Gould, correctly stated:

"Whatever difficulty we might have had in arriving originally at these conclusions, it is reasonable to assume that the decision in Terry v. Terry was followed by the District Courts throughout the State; and the injurious effects which would probably result from a contrary construction at this late date constitute a sufficient reason why we should treat the question as settled." Mayman v. Reviere, 47 Texas, 357, 360.

In the case now before us, plaintiffs in error ask the Court to change the law as announced in decisions construing the Constitution and statutes under which numberless contracts have been made. Numberless liens have likewise been created. Countless times such contracts and liens have been transferred. Unnumerable land titles throughout the State and in all sections have been acquired in reliance on these decisions. Such titles have been approved by our ablest and most careful lawyers, on faith in adherence to oft-repeated decisions by the State's court of last resort. As said by the first Supreme Court of the State of Texas, "we are not disposed to open the question. The rule of *stare decisis,* so far as it applies to decisions of our own court, should not be disregarded, but on the fullest conviction that the law has been settled wrong, and even then we should pause and consider how far the reversal would affect contracts and transactions entered into and acted upon, under the law of this court." Sydnor v. Gascoigne, 11 Texas, 449, 455. The principle was restated when the Court said, "The counsel for appellees vigorously attack the doctrine that the express retention of a lien in the deed or note for the purchase money makes the deed executory. The rule has been too long established and has become the basis of too many property rights for the courts to overturn it. It is a rule to which persons may conform and with which the profession are familiar. The Legislature must deal with this question, if it is to be changed." Farmers Loan and Trust Company v. Beckley, 93 Texas, 267, 274, 54 S. W., 1027.

There is another rule which forbids our taking any other action than adhering to the law as settled by the Supreme Court in this case. Determining constitutional and statutory provisions affecting our decision in this case have undergone no real alteration. The constitutional provisions are unchanged. The statutes have been re-enacted since their interpretation in Givens v. Hudson, supra, without substantial or material change, in the years 1895, 1911, and 1925. In Texas Fidelity and Bonding Co. v. City of Austin, 112 Texas, 229, 246 S. W., 1026, the Court, per Chief Justice Cureton, stated:

"It is an elementary rule of construction that where, after a statute has been construed by the highest court of the State, the Legislature re-enacts the statute, whether by the adoption of Revised Statutes or by amendment, the act of the Legislature carries with it the construction previously placed upon the law by the court."

To the same effect see Cargill v. Kountze Bros., 86 Texas, 386, 24 L. R. A., 183; Arrowood v. Blount, 121 Texas, 52, 41 S. W. (2d) 412; Brackenridge v. Roberts, 114 Texas, 418, 270 S. W., 1001; City of Wichita Falls v. Williams, 119 Texas, 163, 26 S. W. (2d) 910, 79 A. L. R., 704.

We must accept the construction placed by this Court for so many years on the Constitution and statutes in cases necessarily involving their application and construction with the statutes so frequently re-enacted and so long unchanged, and under which vested rights in real and personal property of incalculable value have been acquired.

It is ordered that the judgment of the Court of Civil Appeals in cause No. 6079 be affirmed.

The second case is numbered 5773 and is styled Miss Alberta Huey, Administratrix, v. Mrs. L. Warner, Guardian. (29 S. W. (2d) 452).

■ The writ of error was granted in this case to decide the single question as to whether an unmarried stepdaughter can prevent the sale through administration of the interest of her deceased stepfather in a homestead to satisfy debts of the stepfather incurred after her mother's death, such stepdaughter having resided as a member of the family on the homestead, which belonged to the community estate of her mother and stepfather during their marriage, and she having continued to remain on such homestead with her stepfather until his death. More narrowly stated the question is whether a stepdaughter is such a daughter as comes within the meaning of an unmarried daughter under the statutes, confining the exemption of a homestead from administration to discharge a decedent's debts to a surviving spouse, minor children, and unmarried daughters.

It could hardly be maintained that one, who is not even an heir to the estate of a decedent not related to him by blood in any degree, such as a stepdaughter, can be held to have superior rights in a decedent's homestead to his own dependent, illegitimate, unmarried daughter occupying the homestead with him until his death, or to have a superior claim to his own dependent, orphaned, minor grandchildren likewise sharing in the

occupancy of his home and who are heirs to his estate. Yet it is settled by the Supreme Court decisions that neither such natural child can successfully resist administration on the homestead of the natural father to pay his debts in the one instance, nor can such grandchildren successfully resist administration on the estate of the grandfather for the same purpose in the other instance.

Courts of Civil Appeals at least twice sought to hold a homestead exempt from administration because its owner, a grandmother, was survived by a wholly dependent minor granddaughter, who was an heir to the grandmother's estate and who had lived with the grandmother from infancy and was wholly dependent on her. Clark v. Goins, 23 S. W., 703; Ross v. Martin, 128 S. W., 718. A writ of error was granted in the last mentioned case and it was held that minor grandchildren were not minor children and could not prevent the sale in administration of their grand parent's homestead. Ross v. Martin, 104 Texas, 558, 141 S. W., 518.

An old and dependent mother is held not a constituent member of the family of her son, on whose homestead she resided for years before and until his death, in determining the homestead's exemption from administration to pay the son's debts. Roots v. Robertson, 93 Texas, 365, 55 S. W., 308.

In answering the certified question whether a father's illegitimate, dependent, unmarried daughter was entitled to have his homestead set apart to her as his unmarried daughter within the intent of the statutes, where she had remained on the homestead with her father long before and at the date of his death, the Court declared:

"Article 16, Section 52, of the Constitution, does not secure to the unmarried daughter of the deceased a right to occupy the homestead after her father's death. Mrs. Maloy's right, if she has any, depends upon the construction of the following article of the Revised Statutes:

"Art. 2046. At the first term of the court after an inventory, appraisement and list of claims have been returned, it shall be the duty of the court, by an order entered upon the minutes, to set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, all such property of the estate as may be exempt from execution or forced sale by the Constitution and laws of the State, with the exception of any exemption of one year's supply of provisions.
*   *   *   *   *   *

"There is some conflict of authority upon the meaning of

the word 'child,' when used in a statute, deed or will, but we are of opinion that the decided weight of authority is in favor of the construction that the use in this statute of the words, 'children and unmarried daughters,' refers alone to the legitimate children of the deceased. Johnstone v. Taliaferro, 45 L. R. A., 95; Blacklaws v. Milne, 82 Ill., 506, 25 Am. Rep., 339, 176 Pa., 116, 2 Words & Phrases, word 'child,' 1115." Hayworth v. Williams, 102 Texas, 308, 313.

The only reasonable basis for holding the unmarried stepdaughter an unmarried daughter of the deceased would have to be the moral obligation of the stepfather to provide for the stepdaughter or the identities or similarities in her status to that of an unmarried granddaughter or of an unmarried, natural daughter, who was born out of lawful wedlock. As stated above, the opinions of this Court already discussed definitely reject any such basis for a right in the stepdaughter to claim the benefit of the statutes she relies upon.

Adhering to the principles reiterated in this Court's opinions, we must affirm the judgment of the Court of Civil Appeals, and it is so ordered.

The third case is numbered 5790 and is styled Lee Massey v. Citizens National Bank of Weatherford et al.

A brief statement of the nature and facts of this case is found in the opinion of the Court of Civil Appeals, which will suffice for the purpose of this decision. It is:

"J. E. Massey and wife, Martha Massey, both now deceased, in their lifetime owned in community and by fee simple title 160 acres of land situated in Parker County, upon which they lived as their homestead. Martha Massey, the wife, died on May 22, 1906, leaving J. E. Massey, her husband, and six children by their marriage, all of whom were living. After Mrs. Massey's death, J. E. Massey continued to occupy and live on and use said land with his family as his homestead, and the same was his homestead continuously up to the time of his death, which occurred on January 7, 1928. One of the children, to-wit, Mabel Massey, was born on the homestead in question and lived thereon as a constituent member of her father's family until his death, and yet remains thereon, claiming the right to occupy it as the survivor of her father's family. All other children of the family have either married or removed from the homestead. Mabel attained her majority prior to her father's death and has never been married.

"This suit was instituted by Mabel Massey and the other children and grandchildren of J. E. and Martha Massey alleging, among other things, that J. E. Massey on the 13th day of

February, 1922, after the death of his wife, Martha Massey, executed a note in the principal sum of $550, with interest, to secure which a deed of trust covering J. E. Massey's undivided 5/12 interest in the homestead tract (he theretofore having conveyed 1/6 of his undivided interest to a son, as to whom the disposition below is not questioned) was executed and duly recorded. No attack is made upon the form or bona fides of the debt thus created by J. E. Massey, the note and trust deed having been given to secure the payment of borrowed money. It is undisputed that at the time of the trial the appellee was a good faith holder and owner of the note and trust deed referred to. The plaintiffs prayed that the asserted lien of appellee bank be cancelled and removed as a cloud upon the title of the land involved, and that upon a cancellation of the lien the court appoint a receiver for the sale of the homestead and the proceeds partitioned among the plaintiffs, it being alleged that the homestead was incapable of partition; or, in the alternative, should cancellation be denied, that its enforcement be held in abeyance so long as Mabel Massey chose to occupy the premises as her homestead.

"The trial was before the court without a jury and resulted in a judgment in favor of appellee bank for the sum of $876.97, with a foreclosure of the trust deed lien given to secure the note executed by said J. E. Massey. The foreclosure of the lien was confined to a 5/12 interest in the homestead, it being ordered that the receiver appointed should sell the land and, so far as necessary, apply a 5/12 interest in the proceeds in discharge of appellee's judgment, with interest and costs, and that the remainder of the proceeds be apportioned to the plaintiffs in accord with their respective interests as stated in the petition, about which there is no controversy." * * *

"The questions and the only questions for our determination, as we understand the record, are: (1) Whether the homestead lands in question upon the death of J. E. Massey descended to and vested in the plaintiff heirs, free from the debt and trust deed lien claimed by the appellee bank; and, (2) if not, whether Mabel Massey, the adult unmarried daughter, has the right to continue the occupation of the homestead so long as she chooses during which time the debt and lien of appellee, if any, must be held in abeyance." Massey v. Citizens National Bank of Weatherford, 28 S. W. (2d) 257, 258.

In support of the contention that both questions should be answered in the affirmative, counsel for plaintiffs in error in the beginning of their final argument contend that our answer should be controlled by the opinions in the cases of Zwernemann

v. Von Rosenberg, Childers v. Henderson, and Milner v. McDaniel, supra, in the light of the opinion in Johnson v. Hampton, supra. This contention has already been determined adversely to plaintiffs in error in the portion of this opinion disposing of the case of Kay v. Thompson. We will observe that Milner v. McDaniel, like the Zwernemann and Childers cases, presented no question of enforcement of a valid lien. While in the Milner v. McDaniel case an abstract of a personal judgment against the homestead owner had been filed, recorded, and indexed, no lien on the homestead could be thereby acquired.

The main and final contention of plaintiffs in error is thus clearly stated by their counsel:

"Our contention is that the bank's lien must yield to the homestead rights of Mabel Massey and to the title of the heirs of J. E. Massey. That Mabel Massey being an unmarried daughter of J. E. Massey and a constituent of his family at his death, the homestead (or J. E. Massey's interest therein) descended to and vested in all his heirs free from the debt of the Citizens Bank, none of said indebtedness being for taxes, purchase money or improvement."

■ Once we accept as settled the view so long entertained by this Court as already mentioned, that the Constitution deals in no wise with the relative rights of creditors and heirs in decedent's homesteads save to regulate descent and partition (Ford v. Sims, 93 Texas, 586, 57 S. W., 20), then the question of the relative rights of heirs and a creditor holding a lien created by a surviving unmarried marital partner on such partner's homestead or interest therein, becomes simply one of construction of statutes. And the true and only meaning of the statute under which the rights of the parties to this litigation arise is so plain, in the light of this Court's decisions as a whole, that the question under consideration is not difficult of solution, regardless of the correctness or unsoundness of the decisions in the cases which come nearest sustaining the claim of the unmarried daughter, such cases being the case of Krueger v. Wolf, 12 Texas Civ. App., 167, 33 S. W., 663, discussed in Hedeman v. Newnom, 109 Texas, 472, 478, and the case of Harle v. Richards, 78 Texas, 80. Both the Krueger and Harle cases arose before the amendment in 1917 of former article 2000, R. S., 1879, which latter article was carried forward as article 2053 in the Revised Statutes of 1895 and as article 3420 in the Revised Statutes of 1911. The Krueger case did hold that under the statutes, *before the amendment of 1917,* Wilhelmine Krueger, an unmarried daughter of Josephine Stuessy, remaining with

her mother at the time of her death, with the estate of Josephine Stuessy insolvent, could have set apart to her as homestead or in lieu of homestead two certain lots, on which Josephine Stuessy, while a widow, had on February 1, 1890, given a valid deed of trust lien securing her note for $300.00 to Chas. Wolf, freed from the lien claimed by Wolf, who sought foreclosure of his deed of trust. The Supreme Court refused a writ of error in the Krueger case.

In the Harle case, supra, decided upon apparently similar facts, the Supreme Court adopted a Commission opinion by Presiding Judge Acker, that the mortgage given in 1887 by the surviving widow on homestead property "constitued a *valid lien* against the residence homestead, which may be foreclosed and defendants' interest therein (including the widow's) sold, *subject to the right of the widow and minor children to occupy it as a home. Such foreclosure and sale would divest the defendants of the fee to their respective interests, but would not subject the property to partition during its occupancy by either the widow or minor children,"* citing Lacy v. Rollins, 74 Texas, 566, and Smith v. Van Hutton, 75 Texas, 626.

It may be noted that neither the Krueger nor the Harle case involved enforcement of a vendor's lien nor any lien given by *both* husband and wife. Lacy v. Rollins, 74 Texas, 566.

Anyhow, the decision in the Harle case has been disapproved by Courts of Civil Appeals and by the Supreme Court.

It would seem that before the Harle case was *expressly* disapproved by the Supreme Court it was in effect overruled by the Court's opinion in the case of Ford v. Sims, 93 Texas, 586, where the Court was called on to determine the relative rights of a lienholder coming clearly *within* the terms of article 2000, R. S., 1879, later article 2053 of the Revised Statutes of 1895.

In the case of Ford v. Sims, supra, J. C. Sims and his wife, S. J. Sims, in 1888 gave a deed of trust, duly signed and acknowledged, with power of sale, on land which afterwards became the homestead of J. C. Sims, his wife and children, and which continued such homestead until the death of J. C. Sims, the husband, in 1889, and until the death of S. J. Sims, the widow, in about 1891. At the date of each death, there were minor children. The estates of J. C. Sims and wife were insolvent. The mortgaged property was sold under the deed of trust and purchased by the mortgagee. In an administration of the estates of J. C. Sims and S. J. Sims, in 1892, 200 acres of the mortgaged land was set apart to the minor children as their homestead.

In determining that the purchaser under the mortgage, duly signed and acknowledged by Sims and wife, was entitled to recover both title *and possession* of the 200 acres of land *from the minor children,* the Supreme Court declared:

"Under the law as it was prior to the enactment of article 2053, the judgment of the Court of Civil Appeals (which was for the minors) would be correct; but it was the purpose of the legislature in the enactment of that article, to so change the law upon this subject as to authorize parties to waive the right to have the homestead set apart free from existing liens by creating the lien in the manner prescribed.

\* \* \* \* \* \*

"Article 2053 of the Revised Statutes (of 1895, being word for word art. 2000, R. S., 1879) reads as follows: 'No property upon which liens have been given *by the husband and wife,* acknowledged in a manner legally binding upon the wife to secure creditors, or upon which *a vendor's lien* exists, shall be set aside to the widow or children as exempted property or appropriated to make up the allowances made in lieu of exempted property, until the debts secured by such liens are first discharged.'

"The terms of this article plainly embrace the land in question and forbade the probate court to set it aside to the minor children or to the surviving wife in her lifetime as a homestead free from the mortgage debt."

In the case of Lee v. Mortgage Company, 25 Texas Civ. App., 486, 488, 61 S. W., 134, it was said:

"The deed of trust under which the lien in this case was foreclosed was executed by appellant Lee after the death of his wife and when he was a single man. He was at the time occupying the property with his daughters, the interveners, as his homestead. The decree of the court protected the interveners in their one-half interest in the 160 acres in controversy, but denied the right of partition and possession of the appellee so long as the appellant Lee should occupy the premises as a homestead. As said in Hall v. Fields, 81 Texas, 558, 'the children have no homestead rights as such in the home of either their father or mother,' and further to the effect that their homestead right, if any, must be asserted by a guardian, if minors, properly appointed by the court. The findings of fact upon this subject do not show that the interveners are entitled to any homestead interest in the 160 acres.

"It is said in Lacy v. Rollins, 74 Texas, 566, and subsequent cases, that the surviving husband can create a valid incumbrance and lien upon his interest in the homestead. The appel-

lant having executed the deed of trust for this purpose, a purchaser under it would acquire whatever right or interest the appellant had in the property at the time the instrument was executed, and the sale by virtue of it. By virtue of article 16, section 52 of the Constitution, in a controversy between the heirs and the surviving husband or wife, the homestead during the lifetime of the latter could not be partitioned; but in Ford v. Sims, 93 Texas, 586, 57 S. W., 20, that provision of the Constitution and the statutes made in pursuance of it are held to apply only to controversies between the heirs and the surviving husband or wife, and have no application when a third party, a creditor, asserts a right in the homestead property by virtue of a title acquired from the survivor.

"The trial court in support of its judgment evidently relied upon an expression contained in the opinion in the case of Harle v. Richards, 78 Texas, 80, 14 S. W., 257. We are not prepared to say that that case is directly in point upon the question involved here; but if it could be held that such is its effect, we doubt its correctness.

"If the surviving husband has the power by deed of trust to create a valid lien on his interest in the homestead, in the absence of some statute to the contrary, we see no reason why a purchaser under that deed of trust would not acquire all the rights as against the husband that would exist in a case where the latter had by deed directly conveyed the property to the purchaser. If Lee in this instance had, by deed, conveyed his interest in the property to appellee, the latter clearly would have been entitled to possession, and could, in a proper action, have recovered. A sale by the trustee under the deed of trust in pursuance of its terms should be given the same effect. Lee, by the terms of that instrument, made the trustee his agent and empowered him to sell, and when in the pursuit of the agency this power was accomplished, the deed and conveyance executed would have the same effect in law as if executed by Lee, and would carry with it all of the uses and rights of ownership to the property conveyed, which as one of its incidents includes use and possession.

"Therefore, we think that appellee is correct in its contention upon this question, and that the court should have decreed a writ of possession in favor of appellee as against the appellant Lee, so far as his interest in the 160 acres is concerned; and that the court should have taken the proper steps as requested and as provided by law to partition this portion of the land in controversy between the appellee and interveners."

The Lee case was followed in the case of Savings & Loan

Company v. Bristoll, 62 Texas Civ. App., 388, 390, 131 S. W., 641, with writ of error refused. In that case, on the question before us, the Galveston Court of Civil Appeals per Justice Mc-Means declared:

"But it seems clear to us from the wording of the Constitution and statutes that the prohibition against a partition of the community homestead is as to the heirs of the deceased spouse, and not as to those claiming an interest in the land through titles otherwise acquired than by descent from the deceased spouse. * * *

"Upon the death of William Bristoll his surviving widow had authority to sell, or, as she did, mortgage her undivided half interest in the community homestead. Lacy v. Rollins, 74 Texas, 566; Watts v. Miller, 76 Texas, 15; Bateman v. Pool, 84 Texas, 407; Dwyer v. Foley, 35 S. W., 821. And a sale under foreclosure proceedings, whether by the court or by a trustee appointed for that purpose was as effectual in passing her title to the purchaser as if made directly by her. Lee v. Mortgage Co., 25 Tex. Civ. App., 481, 61 S. W., 137. * * * Having then acquired title otherwise than of descent form, or as an heir of, the deceased, the appellant, Savings & Loan Company, had the right to have its interest in the lot partitioned and set aside to it; and this right was in no manner abridged by the subsequent action of the County Court in setting apart to the guardian the premises in question as a homestead for the minor. Williams v. Jones, 106 S. W., 755.

"The trial court in support of its judgment evidently relied upon an expression contained in the case of Harle v. Richards, 78 Texas, 80. If that case is directly in point we doubt its correctness, for to deny partition to a purchaser from the surviving spouse in favor of a minor child of the deceased who has been permitted by the order of the proper court to use the premises, would be engrafting upon the Constitution and statutes a meaning which their language does not justify nor the rules of construction warrant, and would, in effect, overrule the case of Gilliam v. Null and that line of cases that held that *the prohibition as to partition was as between 'the heirs' during the lifetime of the survivor, or so long as the minor children should be by order of the proper court permitted to use the property as a homesead, and does not prohibit such partition between such heirs and one who had acquired the undivided interest of the survivor in a community homestead.* Lee v. Mortgage Co., supra."

Spencer v. Schell, 107 Texas, 44, cites approvingly the hold-

ings in both the cases last discussed. In the opinion of Mr. Justice Phillips, it is said:

"Proof was offered by Mrs. Spencer that the property was the homestead of herself and her minor children at the time of the creation of the lien, but the court refused to hear it. This was a proper ruling, since under our laws there can be no doubt of the full power of a surviving husband or wife to mortgage the homestead owned as his or her separate estate, or the community homestead to secure a community debt, *although it constitutes, at the time, the home of other constituents of the family*. Smith v. Van Hutton, 75 Texas, 625, 13 S. W., 16; Watts v. Miller, 76 Texas, 13, 13 S. W., 16; Moore v. Poole, 25 S. W., 802; Lee v. British & Am. Mortgage Co., 25 Texas Civ. App., 481, 61 S. W., 134; Echols v. Jacobs Mercantile Co., 38 Texas Civ. App., 65, 84 S. W., 1082; McGee v. Tinner, 129 S. W., 866. As the mortgage was valid, the property was subject to sale; and the plaintiff's right to a foreclosure and possession was not subordinate to any right of occupancy of the property in Mrs. Spencer. Lee v. Mortgage Co., supra.

"In Harle v. Richards, 78 Texas, 80, 14 S. W., 257, a widow having minor children gave a mortgage upon the community homestead, whether to secure a community debt or her separate debt does not appear from the opinion. It was there held by the Commission of Appeals, apparently with the approval of this court, that while the mortgage was valid, and entitled to foreclosure, it was subject to the right of the widow and the minor children to occupy the property as a home; it being stated that 'the property was not subject to partition during its occupancy by either the widow or minor children.' Lacy v. Rollins, 74 Texas, 566, 12 S. W., 314, and Smith v. Van Hutton, supra, are cited in the opinion in support of the ruling, but neither of those cases announces such a rule as applicable to a like condition, or even discusses that question. The correctness of that holding may be seriously questioned, for if the lien was valid, what warrant is there in the law for denying its owner the ordinary incidents of a foreclosure? The provision against partition of the homestead during the lifetime of the surviving husband or wife so long as the survivor or the guardian of the minor children, under the order of the probate court, may elect to so use it, embodied in section 52 of article 16 of the Constitution, which was evidently in the mind of the writer of that opinion, was not intended as a regulation of the rights of creditors; it relates to the rights of heirs and the surviving husband or wife, as between themselves to the homestead property. Ford v. Sims, 93 Texas, 586, 57 S. W., 20.

"But no question of partition arises here, for the children of Mrs. Spencer are not *shorn* to have had any interest in the property. She could have passed the title *and possession* under a sale of it. The lien created by her being valid, the judgment of foreclosure and a sale should be given the same effect. Watts v. Miller, supra; Savings & Loan Co. v. Bristoll, 131 S. W., 641."

■ We have no more doubt than had our predecessors in later cases reviewed that where the statute declares certain liens on property of a decedent must be discharged before it can either be set apart as exempt property or applied to allowances in lieu thereof, the rights of the holders of all such liens to enforce same completely cannot be defeated by any homestead claims of preferred constituents of the family of the decedent.

From the date of adoption of the original statute first directly dealing with this subject, until *subsequent* to all the transactions and events giving rise to this controversy, the Legislature has been enlarging the rights of lien creditors as against the rights in homesteads of surviving spouses, minor children and unmarried daughters. Section 57, Act approved August 9, 1876, 8 Gammel's Laws of Texas, page 942; Art. 2000, R. S., 1879; Art. 2053, R. S., 1895; Art. 3420, R. S., 1911; General Laws, Regular Session, 1917, p. 60; Art. 3942, R. S., 1925.

The amendment of 1917, General Laws, Regular Session of 1917, page 60, in force when the widower gave the mortgage sought to be cancelled by this suit, provided:

"No property upon which a lien or liens have been given by an unmarried person, or by the husband and wife acknowledged in a manner legally binding upon the wife, or upon which a vendor's lien or other lien or liens existing at the date of acquisition of property exists, shall be set aside to the widow or children as exempted property, or appropriated to make up allowances made in lieu of exempted property, or for the support of the widow or children, until the debts secured by such liens are first discharged and provided that this article shall apply to all estates, regardless of whether solvent or insolvent."

This amendment of 1917 was carried into the Revision of the Statutes of 1925 as Article 3492, reading as follows:

"No property upon which there is a valid subsisting lien or encumbrance shall be set apart to the widow or children as exempt property, or appropriated to make up allowances made in lieu of exempt property, or for the support of the widow or children, until the debts secured by such liens are first discharged. This Article applies to all estates whether solvent or insolvent."

While the article was further amended in 1931, (General Laws, Regular Session, 42nd Legislature, page 391, Chapter 236, section 1), such amendment has no bearing on this case, which was decided in the Court of Civil Appeals in 1930. Nothing in this opinion is to be taken as construing said last amendment.

The amendment of 1917, as well as article 3492, Revised Statutes of 1925, prohibited setting apart the father's interest in this property, on which he had created an admittedly valid lien while a widower, as exempt property or to make allowances in lieu thereof, without the discharge of such lien.

■ The foreclosure of the lien by the District Court and the judgment affirming same, effectuates the intent expressed in the plain language of the statute; and, at the same time enforces the contract of the father dealing with his own property. No one questions that the foreclosure was property decreed against the purchaser from the father of a fraction of his undivided interest, despite the father's previous death. Just as little subject to question is the right to foreclose against all his heirs the lien the father gave while a widower on the undivided interest in the property which he retained.

The judgments of the District Court and of the Court of Civil Appeals in Cause No. 5790 are affirmed.

The fourth and last case is numbered 5885 and is styled Mrs. Bertie Gill v. Lila Baird.

The only question on the writ of error in this case, which the Supreme Court will review in writing, no error being found elsewhere in the holdings of the Court of Civil Appeals, is whether our Constitution and statutes sustain the claim of an unmarried daughter to defeat a partition of her parents' homestead at the suit of other heirs.

Were it not for contrary dicta which has occasionally found its way into our own opinions, during the last seven years, though the cases were decided correctly on the issues before the Court, we should be content to merely approve the opinion of the Court of Civil Appeals in paragraph 6 of its opinion on pages 945, 946, of 32 S. W. (2d) 941, with which we find no fault.

■ The question here presented is settled by the familiar principle announced by the present Court in Arnold v. Leonard, 114 Texas, 535, at page 540, in the following short sentence: "It is a rule of construction of constitutions that ordinarily when the circumstances are specified under which any right is to be acquired there is an implied prohibition against legislative power to either add to or withdraw from the circumstances specified," citing Koy v. Schneider, 110 Texas, 378, 218 S. W.,

479, 221 S. W., 880; Dickson v. Strickland, 114 Texas, 176, 265 S. W., 1015; Ex Parte Vallandingham, 1 Wallace, 252, 17 L. Ed., 589; Cooley's Constitutional Limitations, page 99; 6 R. C. L., section 43.

The Constitution plainly specifies the very circumstances under which a decedent's homestead may not be partitioned among the heirs, and no circumstances is there specified to warrant the claim of an unmarried daughter remaining in the home as a member ·of decedent's family to defeat partition when sought by another heir. By necessary inference, such unmarried daughter, like all other adults, except a surviving spouse, is excluded from the right to defeat the partition at the instance of another heir.

The Constitution settles the question in these words:

"It (that is the homestead, on the death of the husband or wife or both) shall not be partitioned *among the heirs of the deceased* during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted under the order of the proper court having jurisdiction to use and occupy the same." Section 52, Article XVI, Constitution. (Italics ours).

The Legislature has no power to add unmarried daughters to the beneficiaries of the partition clause of Section 52. It has not attempted to do so. Instead the statutes follow the Constitution in declaring affirmatively when the homestead may be partitioned and negatively when it may not be partitioned. Arts. 3476, 3497, 3501, R. S.

The Court, per Mr. Justice Stayton, in Hudgins v. Sansom, Guardian, 72 Texas, 232, 10 S. W., 104, said:

"The word 'partition' is evidently used in the Constitution in its legal sense, and means the act or proceeding through which two or more co-owners cause the thing to be partitioned to be divided into as many shares as there are owners, and which vests in each of such persons a specific part with the right to possess it freed from a like right in other persons who before partition had an equal right to possess. A proceeding which would result in this is forbidden by the Constitution *so long as the surviving husband or wife elects to occupy the homestead or so long as the proper court shall permit a guardian with minor children of the deceased to occupy."* (Italics ours).

■ The Constitution is held to confer no right to defeat partition of the homestead at suit of another heir even in behalf of the minor child until the Probate Court makes or has an opportunity to make an order to determine the necessity for such

order in protection of the minor's right.  Osborn v. Osborn, 76 Texas, 494, 496, 13 S. W., 538.

In rejecting the attempt of the unmarried daughter to defeat partition of the parents' homestead, at suit of adult heirs, the San Antonio Court of Civil Appeals, per Chief Justice James said:

"The legislature has placed no restriction upon the right to partition the homestead where the conditions are as shown by the facts in the case.  On the contrary, it is enacted by article 2057, Rev. St., that 'the homestead shall not be partitioned among the heirs of the deceased during the lifetime of the widow, or so long as she may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted under the order of the proper court having the jurisdiction to use and occupy the same.'  *This enactment is a recognition of the right to a partition of the homestead as against the claims of an adult child, male or female.*"  White v. Small, 54 S. W., 915.  (Italics ours).  Writ of error refused, Vol. 25, Tex. S. W. Dig., p. 29282.

To the same effect is Quintana v. Giraud, 209 S. W., 770, where it is stated:  "No provision is made in that section of the Constitution for an unmarried adult daughter living with her widowed mother at the time of the latter's death to occupy the homestead and prevent a partition of it among the heirs of the deceased parents."

The judgment of the Court of Civil Appeals in Cause No. 5885 is affirmed.