## BLEDSOE v. SHORT et al.

### No. 4992.

Court of Civil Appeals of Texas.

El Paso.

Jan. 6, 1954.

Rehearing Denied Jan. 27, 1954.

Ralph D. Baker, Biggers, Baker, Lloyd & Garver, Dallas, for appellant.

E. F. Kucera, C. K. Bullard, Dallas, for appellees.

McGILL, Justice.

This is a will contest case. The deceased, John H. Bledsoe, died May 1, 1951. Appellant Mrs. Jessie Ruth Bledsoe was his third wife, and appellees Mrs. Ethel Short and Ernest Bledsoe were his children by his first marriage. He was married to appellant on August 15, 1935. The instrument alleged to be his will was executed March 4, 1936. By it the deceased left $25 to each of appellees and the residue of his estate to appellant. The appellant, who was appointed executrix in the alleged will, offered it for probate in the probate court and appellees filed a contest in that court, but offered no evidence. The will was admitted to probate by the probate court and the contestants appealed to the 44th Judicial District Court of Dallas County. Trial in that court was to a jury and in answer to the only issue submitted the jury found that the execution of the instrument of March 4, 1936, which was sought to be probated, was procured by undue influence on the part of appellant. On this answer the court rendered judgment denying probate of the instrument as the last will of John H. Bledsoe.

Appellant has presented and briefed seventeen points. The first nine points in one form or another urge the propositions that there was no evidence or no competent evidence to raise the issue of undue influence and that the jury's answer was contrary to the weight of the evidence. The tenth point complains of the admission of testimony of the former wife of deceased and mother of appellees as to statements of the testator made after the execution of the will and the eleventh point complains of the definition of "undue influence."

These points are briefed together and will be so considered.

Of course if there is no competent evidence of undue influence then the issue should not have been submitted and judgment should have been rendered admitting the instrument to probate. In such event all other points would become immaterial.

The facts and circumstances on which appellees rely as raising the issue of undue influence and in support of the jury's verdict are summarized in their brief as follows:

"(1) The fact that the two witnesses to the will were close personal friends of Appellant, one of which worked at the same place she did, and the other having been a friend of hers for 8 or 10 years prior to her marriage to testator together with the admission of the Appellant that at the time the instrument was executed she drove the automobile and took said witnesses and her husband to the attorney's office; and one of the witnesses, Alma Henderson, admitted under cross-examination as follows:

"'Q. Didn't you testify in the Probate Court that he asked her to leave that room where that will was being signed? A. Well, he told her she couldn't remain there.'

"and:

"(2) That after the will was signed on March 4, 1936, that thereafter she participated in having deeds executed to the separate property of she and testator, conveying the same to her good friend, Mrs. Lizzie Morris, one of the witnesses to the will, who in turn conveyed the same back to them so as to create the presumption of community property; and

"(3) That in a few months after the will had been executed testator told his divorced wife, Mrs. Dean Parker, the mother of his two children, that:

"'Q. Well, I wish you would tell the jury just what he said. A. She wanted a will and he didn't want no will. She kept on asking about the will until finally he told her to go ahead and make it like she wanted and he would sign it and get rid of it, because he says "I know I'm going to break it later".'

"(4) The witness, Mrs. Albert White, who had been testator's second wife, stated that she had lunch with Appellant about six months after her marriage to testator:

"'A. She says, "Well, Bertha, you were just too easy." And she says "You know, when I married Johnnie, I went out there and I straightened things out. I strictly taken things over." So help me God.'

"(5) And the witness, Mrs. Florence Harrison, who was a housekeeper for Appellant and the testator and who had an opportunity to observe the family relations, testified that:

"'Q. What would you say was the conduct; was it peaceful—did they ever have any difficulties between each other? A. Oh, Yes. They got along pretty well together, as long as he did what she told him to.'

"(6) That testimony was introduced by both sides regarding the values of the property which, prior to testator's death, was being developed by building and selling homes on the lots, and the best value being that shown in the Temporary Administrator's Inventory and Appraisal in this case showing a value in excess of $28,500.00."

It should be added that appellees also contend that the instrument made an unnatural disposition of the property of deceased and that after the conveyances referred to appellant sold the property she had previously owned and she and deceased proceeded to develop the property previously owned by deceased by building houses on same and selling them, the value of such properties as shown by the inventory of the temporary administrator being in excess of $28,500. Such inventory does not appear in the record and we have

found no evidence that appellant sold the property which previously belonged to her. Appellees also relied on the testimony of Nell R. Eley to effect that she talked to Mr. Bledsoe at Mrs. Parker's (his former wife and the mother of appellees) house in 1948; that the boy Ernest was sick in Waco and Mr. Bledsoe gave Mrs. Parker some money and that the witness asked him "Why this slipping around and giving money?" and he said he had to do it. That he was concerned about his boy in Waco that was sick, and his only means of keeping in touch with him was through his mother. Also on the further testimony of Mrs. Harrison to the effect that the children visited in their father's home and they seemed to think a great deal of their father and he of them. Appellees also rely on the testimony of Mr. T. S. Walker to effect that he built three houses for the Bledsoes in 1946; that Mrs. Bledsoe gave the orders; that Mr. Bledsoe helped him; that when a man came and inquired whether a house was for sale he heard Mrs. Bledsoe say to Mr. Bledsoe: "Listen, when a man comes and wants to buy the house I am selling this house, you just stay out of this." Also on the testimony of a Mr. W. A. Maynard to effect that he built a house for Mr. and Mrs. Bledsoe in 1948 and that she did most of the talking, that she was running the building of the houses; that he had difficulty with Mrs. Bledsoe; that Mr. Bledsoe never paid him; that if he wanted any money he had to go to Mrs. Bledsoe and get it.

We have carefully read the entire statement of facts. The evidence is uncontroverted that the instrument offered for probate was executed in the office of an attorney referred to as "Judge Henderson", with the formalities required by law to make it a valid will. There is no evidence that appellant had anything to do with furnishing the attorney the information from which he prepared the will, if he did prepare it. It does appear that this attorney was dead and hence unavailable as a witness.

■ It is true, as said in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, 1036:

"(4) It is rarely possible to prove undue influence by what is generally known as direct testimony. Undue influence is usually a subtle thing, and by its very nature it usually involves an extended course of dealings and circumstances. Usually a person charging undue influence must substantiate such charges by circumstances extending over a considerable length of time. It is therefore the settled rule that undue influence can be established by what is known as circumstantial, as well as direct, evidence. Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759; Bergstedt v. Bender, Tex.Com. App., 222 S.W. 547."

but undue influence which will void a will must be exercised at the time of making the will and the will must result therefrom. Burgess v. Sylvester, Tex.Civ.App., 177 S.W.2d 271, affirmed 143 Tex. 25, 182 S.W. 2d 358, 359.

■ Under the rule enunciated in Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, the testimony of Mrs. Dean Parker as to declarations of the testator, even though made within a period not too remote after the execution of the will was inadmissible on the issue of undue influence unless undue influence was otherwise independently proved. If there was independent proof of undue influence such declarations were admissible if indicative of testator's mental condition at the time of the execution of the will as presumably produced by the operation of the influence. In other words, as tending to show the effect of the undue influence upon his mind.

■ This record, stripped of Mrs. Parker's testimony, reveals no evidence of undue influence. The fact that the will is an unnatural will, if it is, is not sufficient to void it. In re Bartels' Estate, Tex.Civ. App., 164 S.W. 859, wr. ref.; Cameron v. Houston Land & Trust Co., Tex.Civ.App., 175 S.W.2d 468, w. r. w. m.

448

Nor is the mere fact that opportunity exists to exercise undue influence alone of sufficient probative force to raise the issue.

When this record is stripped of Mrs. Parker's testimony as to declarations of the testator, which as indicated was improperly admitted, the two circumstances above stated are about all that is left to raise an issue of undue influence. We hold that they are not sufficient and that the court should not have submitted the issue to the jury. Therefore, the judgment is reversed and judgment here rendered admitting the instrument dated March 4, 1936, and offered for probate, to probate as the last will and testament of John H. Bledsoe, deceased.

Reversed and rendered.