**Modesto WHITE, Appellant,**

v.

**H. Robert SMITH et al., Appellees.**

**No. 3240.**

Court of Civil Appeals of Texas.

Waco.

Feb. 17, 1955.

Rehearing Denied March 17, 1955.

Hamblen & Bobbitt, Houston, Bradford Pickett, Liberty, Eugene T. Jenson, Anahuac, Bobbitt, Brite & Bobbitt, San Antonio, Chas. B. McGregor, Waco, for appellant.

Guy C. Jackson, Jr., Anahuac, C. C. Chessher, Chap B. Cain, Frank Turner, Liberty, Charles F. Cockrell, Jr., Houston, Kerns B. Taylor, Anahuac, for appellees.

TIREY, Justice.

This cause involves the contest of the last will and testament of Daisy M. Gill. Her will was admitted to probate by the County Court of Chambers County. Contestants seasonably perfected their appeal to the District Court. At the conclusion of the testimony the trial court overruled proponent's motion for an instructed verdict and submitted the case to the jury on two issues, as follows:

"(1) Do you find from a preponderance of the evidence, that at the time Daisy Gill executed the purported will, which has been offered in evidence for probate on this trial as her last will and testament; she possessed testamentary capacity, as that term is defined to you below?", to which the jury answered "Yes".

. The court instructed the jury with reference to this issue:

"By the words 'testamentary capacity' is meant that the person making the will must, at the time the will is executed, have sufficient ability to understand the business in which she is engaged, the effect of her acts in making the will, the capacity to know the objects of her bounty and their claims upon her, and the general nature of her property."

"(2) Do you find from a preponderance of the evidence, that the making and execution of the instrument which is sought to be probated here as the last will and testament of Daisy M. Gill, and which is in evidence before you, dated January 26, 1950, was procured through undue influence, if any, exerted upon her by Modesto White, as the term 'undue influence' is hereinafter defined?", to which the jury answered "Yes".

In connection with Issue 2 the court gave the following instruction:

"* * * you are instructed that by the term 'undue influence' as used in this charge, is meant influence ex-

erted upon the testatrix which compelled her to do that which is against her will from a desire of peace, or because of weakness, or from some feeling which she is unable to resist.

"To constitute undue influence it is not necessary that any overt act or acts of influence be exerted at the very time the will is executed, but it is necessary that through the existence of an influence previously exerted and which is operating upon the testatrix at the very time the will is executed, her free agency at that time is destroyed and an instrument results which does not represent the wishes of the testatrix but represents the wishes of the person exercising the influence." (These instructions are not here assailed).

The court overruled proponent's motion to disregard the jury's answer to Issue 2, granted contestants' motion for judgment, refused to admit the will to probate, declared the will tendered for probate to be null and void, set aside the proceedings in the County Court of Chambers County admitting the will to probate, and ordered that the judgment of the District Court be certified to the County Court of Chambers County for observance.

The proponent seasonably perfected his appeal to the Galveston Court of Civil Appeals and the cause has been transferred to this court by order of the Supreme Court.

Appellant's brief assails the judgment on what he designates as eleven points. Point 1 is substantially to the effect that the court erred in submitting Issue 2 to the jury and entering judgment for contestants upon the answer of the jury thereto, because the issue of undue influence on the testatrix was not tendered by the evidence, and there is no evidence of probative force to sustain the jury's affirmative answer thereto, and that by reason thereof the court should have granted his motion to disregard the answer to Issue 2 and admitted the will to probate. We sustain these contentions. Points 2, 3, 4, 5, 6, 7, 8 and 9 tender substantially the same

point. Appellees' 1st, 2nd, 3rd, 4th, 5th and 6th Counter Points challenge the correctness of appellant's contentions. The testimony and exhibits tendered are in excess of 900 pages, and the fact that appellant and appellees cannot agree on the effect of the testimony tendered requires us to make a very careful examination of the entire evidence adduced on the question of undue influence. In approaching this task we must keep in mind the rules announced by our Supreme Court and particularly the last expressions thereon in order to apply the rule of law applicable to the factual situation here. In so doing we must keep in mind the statement of the rule in Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511 (writ ref.) and determine whether there is in this record any admissible evidence of probative force, direct or circumstantial, raising the pleaded issue that the will in question was the product of undue influence. In so doing we must also bear in mind that where the facts are controverted; or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised if, discarding all adverse evidence and giving credit to all evidence favorable to the appellees, and indulging every legitimate inference favorable to the appellees which might have been drawn from the facts proved, a jury might have found in favor of the appellees. The foregoing is substantially the statement of the rule by this court in Olds v. Traylor, supra. In applying these rules to the factual situation here, it is also our duty to bear in mind that the influence, if any, exerted on the testatrix was not undue unless the free agency of the testatrix was destroyed that caused the testatrix to execute a will that she did not desire to make. Also, we must keep in mind the restatement of the rule in Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199, points 5, 6 and 7, bearing particularly in mind that while the jury is the judge of the facts proved and the inferences to be drawn, such

inferences must not be unreasonable. Moreover, we think the applicable law must be applied in the light of the last expression of our Supreme Court, which is found in Curry v. Curry, 270 S.W.2d 208, and Pool v. Boyer, Tex.Civ.App., 268 S.W.2d 223, now under submission in the Supreme Court. These two cases are controlling and binding upon us.

Daisy M. Gill executed the will in question on January 26, 1950, at which time she was approximately 73 years old. She had inherited from her mother an undivided one-eighth interest in approximately 8,000 acres of land, on which land oil had been developed, and testimony was tendered to the effect that she was a woman of strong mind, and that she possessed the family characteristic of doing exactly what she wanted to do and no one could persuade her otherwise. She died on November 27, 1952. Her will gave all of her property to her brother Modesto White and her nephew Clifford White, son of Modesto. She had been married one time only and had no children born to her and her husband predeceased her. Evidence was tendered to the effect that on March 18, 1949, the testatrix wrote a letter in her own handwriting to the Hon. W. P. Hamblen, Sr., requesting that he prepare for her and Perry, her husband, a will, "one for the other." We quote the pertinent parts of this letter: "I want you write me a will. I want to give all land and everything I have at my death to go to my husband Perry Gill and if he should dies before I did he wants everything he has to go to me. I am sending you a blank check fill it out how much you charge and I will sine it and send it to you." Mr. Hamblen complied with this request and wrote two wills, one for Daisy to her husband; the other for Perry Gill to Daisy, and sent them to Daisy by letter dated March 23, 1949. Daisy promptly acknowledged receipt of the wills and enclosed her check for $25 in payment for the preparation thereof. It also appears from the record that Daisy and Perry each executed his respective will and it is shown that R. V. Jarnegan and L. R. Miller witnessed the execution of Perry's will, but it is not specifically shown that they were witnesses to the will that Daisy made to Perry; however, it is shown that Jarnegan and Miller were the witnesses to the will that Daisy executed on January 26, 1950, and the will here before us. There is a total absence of any influence having been exerted on Daisy M. Gill to execute a will to her husband, and there is no evidence that prior to March 23, 1949 that Modesto White, or any one else, had exercised any influence on Daisy to get her to execute a will to Modesto. However, if we should be mistaken in this behalf, such influence, if exercised, was ineffective and did not destroy her free agency to make the will she desired to make, because she did execute a will on March 23, 1949 for the sole benefit of her husband.

So we come to consider next what evidence, direct or circumstantial, is in this record since March 23, 1949 that Modesto or any one else brought influence to bear on Daisy that destroyed her free agency and caused her to execute the will on January 26, 1950 and leave all of her property to Modesto and his son Clifford to the exclusion of her other legal heirs. Appellees have not pointed it out and we have been unable to find it. The record shows that Perry Gill died on or about the 15th or 16th of January, 1950, and that within a few days, seven or eight days thereafter, the exact number of days not being found by the jury, Daisy, in her own handwriting, wrote a letter to W. P. Hamblen, Sr., requesting him to prepare the will in question. There is a total absence of facts or circumstances to show that any influence, direct or circumstantial, was brought upon Daisy, causing her to write the letter to Mr. Hamblen after her husband's death. (We also think it is significant that the time was very short from the date of Perry's death until Daisy personally wrote Mr. Hamblen, Sr., requesting him to prepare the will to Modesto and Clifford). We quote the pertinent parts of this letter: "My husband Perry died and I want (you) to make a will for me to Modesto and Clifford White just like the will you made for me." Mr. Hamblen received this letter through the

mail, handed it to his son, W. P. Hamblen, Jr. (at that time his associate) and requested him to prepare the will. Mr. Hamblen, Jr., took the letter of instructions, found the Gill file in the office, and prepared the will in accordance with the letter of instructions received from Daisy, and either on the same day or the following day Mr. Hamblen, Jr., took the will from his office to the home of Daisy in Chambers County. Mr. Hamblen, Jr., was on his way to Anahuac on business pertaining to the Estelle Condley Estate, of which he was acting as administrator (Estelle being a deceased sister of Daisy Gill), and he went by the home of Daisy for the purpose of delivering the will to her and giving her instructions concerning its execution. He found her alone on the porch. "Did you discuss the will with her? A. Yes, I told her we had received her letter requesting that we prepare a will for her and told her since I was coming to Anahuac, I had prepared it and brought it to her, and I would like to read it to her. I did read a portion of it and she said, 'just tell her what it was' and I told her. Q. Did you tell her who the beneficiaries were in that will? A. Oh, yes, I told her that. Q. Then what did you do? A. When she advised me that was what she wanted, I tried to explain to her the steps to be taken to execute it and she told me she (would) bring it in to Anahuac to Judge Jarnegan and get him to witness it for her and I left it with her."

It is true that Daisy in her letter made no suggestion to Mr. Hamblen, Sr., as to whom she wanted to appoint executor of her estate, but since Mr. Hamblen, Jr., had in mind the provisions previously made in the wills that had been prepared for Daisy and her husband prior to this time, and having further in mind Daisy's request that she was leaving her property to Modesto and his son Clifford, and being familiar with the family history, it would have been most unusual if the scrivener had not provided in the will for Modesto to be the independent executor. We think we should say that there is a total absence of any testimony, direct or circumstantial, that Mr.

Hamblen, Sr., or Mr. Hamblen, Jr., made any statement or suggestion to Daisy that was calculated to influence her to leave the property to Modesto or his son Clifford, or did anything whatsoever to destroy her free agency in the making and the execution of this will. It is without dispute that Modesto had been to some extent the manager of this large estate since the death of his mother, and since the discovery of oil the estate had become very valuable. (The foregoing statement is based on the record as a whole and on statements of counsel in oral argument before us). In all events, the scrivener was very careful to discuss the provisions of her will with Daisy before she executed it and gave to her instructions concerning the execution of the will. Moreover, it is also significant that Daisy said in effect that she was pleased with the will and executed it as it was drawn and according to the instructions of the scrivener.

It is true that it is not clear from the evidence and there is no finding thereon as to whether Modesto or Clifford brought Judge Jarnegan, one of the witnesses to the will, to the office of Judge Miller, the other witness to the will, and it is our view, under all the facts and circumstances here adduced, that it is immaterial and without probative force as to who may have brought Daisy to Anahuac for the purpose of executing the will, because we find nothing in the record, either direct or circumstantial, that Modesto or Clifford, or any one else, brought any pressure to bear on Daisy to execute this will, and appellees have not pointed it out in their briefs. Here we find it is without dispute that Daisy wrote her instructions about the preparation of each of the wills and sent her check for $25 for the preparation of the wills of herself and her husband, and testimony was tendered to the effect that she paid for her last will here under consideration and that Modesto White did not pay for it, and such testimony is uncontradicted. Our view of the record is that it is wholly lacking in any fact or circumstance showing any fraud, fact or circumstance that operated on the mind of Daisy M. Gill

which destroyed her free agency in executing this last will wherein she bequeathed to her brother and her nephew all of her property.

Appellees in their original brief say: "The record is replete with evidence, both actual and circumstantial, relative to the testamentary intent of Daisy Gill at the time of executing the will in question." We are in accord with this view, and we are of the further view that the intent of Daisy M. Gill at the time of executing the will was solely for the benefit of her brother Modesto and her nephew Clifford, and that no fraud or undue influence is shown to have been practiced upon her. Such view is harmonious and consistent with the letter of instructions she wrote to Mr. Hamblen, Sr. It is likewise harmonious and consistent with her statement to W. P. Hamblen, Jr., when he delivered the will to her and gave her instructions as to the execution. It is likewise harmonious and consistent with her action in calling in long time friends at the courthouse to witness the will. All of the facts and circumstances tendered here, direct and circumstantial, permit of no other conclusion. It is our further view that reasonable minds cannot differ thereon. This view, we believe, is in accord with the statement of the rule by this court, speaking through the late Chief Justice Gallagher, in Stewart v. Miller, 271 S.W. 311, 316, (writ ref.), wherein it is stated: "In the absence of direct evidence of undue influence, the same may be established by circumstances; but in such cases the circumstances relied on must be of a reasonably satisfactory and convincing character. They must not be equally consistent with the absence of the exercise of such influence." Nor do we think our view here is in conflict in any respect with the statement of the rule in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034. Nor do we think her will to Modesto and Clifford was an unnatural will in that she did not bequeath anything to her sisters Fannie and Minnie. The record is without dispute that they were advanced in age; each was a feme sole, and there is no evidence to the effect that either had had children born to them, and evidence was tendered to the effect that one of the sisters, Minnie, had made a will whereby she bequeathed her property to Modesto, and another sister, Fannie, said she had made her will whereby she bequeathed her property to Modesto and his son Cliff. Moreover, if Daisy had been subject to the influence and control of Modesto so as to destroy her free agency in the disposition of her property, would he not have exercised such influence on Daisy to the extent that he would have caused her to will to her husband only an estate less than the fee simple with remainder over to him or to his son Clifford as Modesto desired? It is true that there is nothing in the record to indicate the age of Daisy's husband (he served in World War I), but we think that all of the facts and circumstances indicate that he was advanced in years. At any rate, since Daisy had no children born to her, and since most of her estate seems to have been her separate property, it would not have been unnatural for Modesto to have pointed out to Daisy that in the event she predeceased her husband and the property passed to him in fee simple by her will, that the whole of it would have gone to her husband's family instead of to Daisy's legal heirs, and the record is absent any testimony in this behalf. Moreover, the record is without dispute that Daisy received some property from her husband that had come to him from his father's estate. It also appears without dispute that after the probate of her husband's will and after she had executed her will of January 26, 1950, she conveyed to the heirs of Perry Gill the property that her husband had received from his father's estate. Such action on the part of Daisy in so doing is in irreconcilable conflict with the idea that she was unduly influenced by Modesto at the time she made the will in question, or that her free agency was destroyed in the management of her property. (The record also reflects that prior to the death of Perry Gill, Daisy had her own bank account; that she paid some of her bills by check, some of her checks being in rather large amounts and that she continued to keep her bank account and pay

some of her bills by check after the death of her husband and up to the time of her death.)

Appellees in open court asked for permission to file a reply brief and point out in the record facts and circumstances and testimony in support of the jury's verdict on undue influence. This request was granted and thereafter appellees filed such supplemental brief. We have read this supplemental brief with great care and we fail to find any evidence, direct or circumstantial, that tenders the issue of undue influence in this cause. Here we have a woman who is possessed of substantial holdings, writing her attorney, Mr. Hamblen, Sr., whose father and brother and himself, had represented her, her mother and other members of the family over a long period of time, advising him of her intention and desire to execute a will and instructing him as to the disposition to be made of her property at her death. This lawyer responded to this request and caused such will to be prepared and delivered to her with instructions as to its execution, and Daisy made her own selection as to the witnesses she desired to witness her last will and testament. We not only fail to see any evidence, direct or circumstantial, of undue influence, but we fail to find that "suspicion" that our Supreme Court said may have existed in Curry v. Curry, supra.

Appellees' 9th, 10th and 11th cross-points are to the effect that in event this cause should be reversed, it should be remanded and not rendered, because the court erred in permitting W. P. Hamblen, Sr., to testify concerning his observations as to mental capacity of Daisy M. Gill, and also to testify about certain letters he received from her concerning the writing of her wills, because such testimony violated the provisions of art. 3716, Vernon's Ann.Civ. Stats., in that such witness was an interested party to the suit because he was the attorney who prepared the will offered for probate and that his firm had accepted employment for a contingent fee, and that by reason thereof he was an interested party and precluded by the statute.

This record is without dispute that Mr. Hamblen, Sr., was called to testify on the hearing in the County Court of Chambers County when the will was offered for probate by the contestants, and he was further called to testify by attorneys for contestants in that they took his deposition after this cause was appealed from the County Court to the District Court of Chambers County. This brings the points raised directly within the rule announced by our Supreme Court in Allen v. Pollard, 109 Tex. 536, 212 S.W. 468, and Perdue v. Perdue, 110 Tex. 209, 217 S.W. 694, and cases there cited. Our Supreme Court has not seen fit to change the application of the rule there stated. See also Davidson v. Gray, Tex.Civ.App., 97 S.W.2d 488, pts. 6 and 7 (no writ history). The rule announced by our Supreme Court has been followed by the Supreme Court of the State of Arkansas in the case of Smith v. Clark, 219 Ark. 751, 244 S.W.2d 776, pt. 18, and also by the Supreme Court of Illinois in the case of Pink v. Dempsey, 350 Ill.App. 405, 113 N.E.2d 334, pt. at page 338. See also Mueller v. Banks, Tex.Civ.App., 273 S.W.2d 88 (no writ history).

In this connection, we have considered each of the other counter-points in appellees' brief and each is overruled.

Appellant's Points 10 and 11 complain of the error of the court in the admission of the testimony of Mattie Gill Haynes and the witness Fay Humphrey on the ground that the testimony admitted was hearsay. We are of the view that these contentions must be sustained under the doctrine announced in Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Naihaus v. Feigon, Tex.Civ.App., 244 S.W.2d 325, (n. r. e.), and Bledsoe v. Short, Tex.Civ. App., 264 S.W.2d 445 (n. r. e.). Owing to the fact that such error does not affect the disposition we make of the case, we see no reason for discussing these points.

Because of the views here expressed, and being of the further view that this cause has been fully developed, we think it was the duty of the trial court, under the record here made, to grant appellant's mo-

tion to disregard the jury's finding on undue influence and render judgment admitting the will to probate; and since the trial court failed to do so, it is our duty to reverse and render the judgment of the trial court and here render judgment that the last will and testament of Daisy M. Gill, executed on January 26, 1950, be admitted to probate as her last will and testament.

Accordingly, the judgment of the district court of Chambers County denying the probate of the last will and testament of Daisy M. Gill is reversed and rendered and the district court of Chambers County is hereby directed to admit the last will and testament of Daisy M. Gill, executed under date of January 26, 1950, to probate, and further direct that such judgment be certified to the county court of Chambers County for observance, and the judgment of the district court of Chambers County is reversed and rendered with instructions in accordance with this opinion. All costs incurred by appeal from the district court to this court are taxed against appellees.