Myrtle Mae CHANDLER, Appellant,

v.

R. C. WELBORN et al., Appellees.

No. 3193.

Court of Civil Appeals of Texas.

Eastland.

Sept. 23, 1955.

Rehearing Denied Oct. 21, 1955.

Hawkins & Dean, Breckenridge, for appellant.

Bradbury, Tippen & Brown, Abilene, for appellees.

GRISSOM, Chief Justice.

On May 7, 1951, Myrtle Mae Chandler, Florence Irion and W. J. Cunningham, Jr., filed suit against R. C. Welborn and W. J. Cunningham, Sr., in trespass to try title to Lots 4 and 5, Block 155, in the City of Abilene. On May 21, 1951, said defendants answered. On May 24, 1951, Hendrick Memorial Hospital filed a petition in intervention against all parties, both plaintiffs and defendants. It alleged that on November 20, 1950, W. J. Cunningham, Sr. was admitted to said hospital and had remained there since and owed it $1,573.20; that he had no property other than said lots; that on April 6, 1951, he purported to convey them to plaintiffs, who were his children and are his heirs at law, but that said deed was executed while he was insane. It

prayed that said deed be cancelled, a receiver appointed and its lien established.

Senator W. J. Cunningham, Sr., died September 3, 1952. In 1953 J. S. Warlick intervened. He alleged he had an interest in the controversy because Senator Cunningham was indebted to him for services as a nurse in the amount of $753 and that said deed was executed while he was insane.

On January 14, 1954, plaintiffs answered the pleas of intervention. They alleged the lots conveyed to them by the deed which intervenors sought to set aside constituted the homestead of Senator Cunningham and wife and was their community property when Mrs. Cunningham died on August 4, 1947; that it was the Senator's homestead when he executed the deed of April 6, 1951; that Mrs. Cunningham died intestate and plaintiffs inherited her one-half interest, subject to the homestead rights of the Senator; that, because said land was the Senator's homestead when he executed the deed, his one-half interest was owned by them freed of all claims of his creditors.

Thereafter, said hospital filed an amended petition alleging it was a creditor of Senator Cunningham by reason of the services rendered to him from November 20, 1950 until his death on September 3, 1952; that the reasonable value thereof was $6,870.40 and that when the deed was executed he owed it $1,320.70. All intervenors adopted and made a part of their petitions against the grantees in the deed the cross action of one of the original defendants, R. C. Welborn. Mrs. Welborn alleged in her cross action that plaintiffs' suit in trespass to try title to the lots described in said deed was originally brought against her and W. J. Cunningham, Sr.; that he died on September 3, 1952; that plaintiffs were the children and heirs at law of Senator Cunningham and that she was a sister. She alleged she nursed and cared for the Senator during his illness; that she was a creditor; that she had rendered service to him, paid his medical bills and paid for other necessities; that, as a

creditor, she was interested in said suit and had a right to maintain a suit to cancel said deed, which was executed while he was insane, for which she prayed. Her cross action for cancellation of the deed was against all the grantees in said deed.

Dr. C. L. Prichard intervened, alleging he was a creditor and had filed his claim with the administratrix and it had been rejected. He, also, adopted the cross action of Mrs. Welborn and prayed that the deed be cancelled.

By separate pleadings, intervenors later alleged they were creditors of Senator Cunningham, deceased, and sued Mrs. Chandler as administratrix. They alleged they presented their claims to said administratrix and that they had been rejected. All the grantees in the deed had answered the petitions of the intervenors. Mrs. Chandler, as administratrix, filed separate answers to each of the intervenors' separate petitions filed against her as administratrix, adopting therein the prior answers of all the children and grantees, wherein they defended on the ground that the Senator was sane when he executed the deed and that the lots were his homestead when he executed the deed and that, therefore, they owned his interest, freed of all claims of intervenors.

At the close of the evidence said administratrix moved for an instructed verdict on the following grounds: (1) that there were no pleadings asserting a cause of action within Articles 3996 and 3997 and, therefore, there was no cause of action alleged to set aside said deed; (2) there was no evidence of such a cause of action; (3) that defendant and intervenors were not entitled, as creditors, to set aside said deed because the Senator was insane; (4) intervenors were not entitled to set aside the deed without seeking some additional relief; (5) the evidence showed the lots constituted the homestead of the Senator when he executed the deed and, therefore, they were exempt from forced sale and, therefore, said deed could not be set aside by creditors; (6) intervenor's claims were barred by Article

3522; (7) it was conclusively shown the grantees took possession more than two years prior to the filing of their pleas in intervention and, if said deed should be set aside, intervenors' claims were barred by the two years' statute of limitation, Article 5526; (8) there was no "legitimate" evidence that intervenors were creditors and (9) the grantees in said deed were indispensable parties and no judgment setting aside said deed could be rendered without their joinder. The last objection was also urged to the charge, that is, that neither the defendant, R. C. Welborn, nor any intervenor was entitled to set the deed aside because the grantees therein were not parties to the suit to set the deed aside. They further objected to the charge because neither the defendant Welborn nor any intervenor was such a creditor as was entitled under the law to set aside the deed on the ground of the Senator's insanity, because a mere creditor was not entitled to cancel a deed on account of the insanity of the grantor.

The court submitted only the issue of the grantor's mental capacity to execute the deed and a jury found he was then of unsound mind. The court rendered judgment that said children, the original plaintiffs in trespass to try title, recover title and possession of the land against the defendant R. C. Welborn, but that said deed be cancelled. The grantees in said deed, individually, and Mrs. Chandler, as administratrix, have appealed.

The pleadings and evidence are to the effect that the property described in said deed was all of the Senator's property. One of his children, Mrs. Chandler, was appointed administratrix. As administratrix, she could have sued to cancel the deed. But, she was a grantee therein as well as an heir. She testified in answer to interrogatories propounded by appellants that the Senator was sane when he executed the deed to her and her sister and brother. Appellees presented their claims to said administratrix and they were rejected. Intervenors' suits are, in essence, an attempt by unsecured creditors to cancel the deed of their debtor because

he was insane when he executed it under such circumstances that, but for said deed, the property would have descended and vested in plaintiffs but subject to payment of intervenors' debts.

Appellants' first point is that the court erred in holding that an unsecured creditor could set aside a debtor's deed because the debtor was insane, or for any reason other than those stated in Articles 3996 and 3997. Articles 3996 provides that every conveyance made with intent to defraud creditors shall, as to creditors, be void. Article 3997 provides that every conveyance by a debtor, without a valuable consideration, shall be void as to prior creditors, unless the debtor then had other property sufficient to pay his debts.

Appellees also alleged the conveyance was made to defraud the creditors of W. J. Cunningham, Sr., and that he had abandoned his homestead, but judgment for the intervening creditors was based on the finding that he was insane when he executed the deed. Appellants contend Articles 3996 and 3997 state the only grounds for creditors to set aside the deed of a debtor, and that, since they did not bring themselves within said statutes, they cannot maintain a suit to cancel the deed. They cite as authority therefor John Hancock Mutual Life Ins. Co. v. Morse, 132 Tex. 534, 124 S.W.2d 330, 332, and Ransom v. Ransom, Tex.Civ.App., 252 S.W.2d 212, 213, and quote from Judge Hickman's opinion in the Morse case as follows:

"The proposition is well settled in this state that, as between the parties to the transfer, a conveyance made in fraud of creditors passes title to the vendee, and is defeasible only at the instance of the creditors named in Articles 3996 and 3997, * * *."

Appellants further contend that because Senator Cunningham executed the deed while the lots were his homestead his creditors could not, after his death, have it cancelled. Said statutes state the grounds on which a creditor must rely to set aside a deed executed by a debtor-grantor for the purpose of defrauding his creditors but they do not refer to the question presented here, that is, whether an unsecured creditor, after the death of the debtor, has such an interest in the debtor's homestead that they can maintain a suit to cancel a deed thereto, executed while insane, when, but for the deed, at the debtor-grantor's death, the homestead would have descended and vested in his heirs, subject to payment of his debts. The deed referred to in said statutes could not be cancelled by a grantor who executed it for the purpose of defrauding his creditors, nor by his heirs or legal representatives. But, if the Senator had regained his sanity he could have set aside a deed to his children executed while he was insane. A deed executed by an insane man may be cancelled at the suit of the deceased debtor's representative or heir, without regard to said statutes. Jackson v. Jones, 74 Tex. 104, 11 S.W. 1061, 33 A.L.R. 51. The rights of the creditors, heirs and grantees in this suit are quite different from what they would have been had the deed been cancelled because the deed was executed by the grantor for the purpose of defrauding his creditors. See John Hancock Mutual Life Ins. Co. v. Morse, 132 Tex. 534, 124 S.W.2d 330, 333.

At the execution of the deed the property was the homestead of the Senator. It could not have then been subjected to the claims of creditors. But, having died intestate, but for said voidable deed, the property would have descended and vested in his heirs, subject in their hands to the payment of his debts, because no constituent member of the Senator's family survived. Thompson v. Kay, 124 Tex. 252, 77 S.W.2d 201; 22 Tex.Jur. 327; Givens v. Hudson, 64 Tex. 471.

Appellees' cross actions were not filed until after the Senator's death. The main question presented is whether, under such a fact situation, after the death of said debtor, the unsecured creditors have such an interest in said property that they should be permitted to maintain a suit to cancel the deed. We have been cited to

no authority directly decisive thereof and have found none. Since it appears the Senator's estate is actually in the hands of his sole surviving heirs, if the deed is cancelled, they can then be holding only as heirs, not as grantees. If they are holding as heirs, their right thereto is subject to the right of the creditors to collect their debts out of said property. In such an equitable proceeding the courts should look to substance rather than form.

In Montgomery v. Culton, 18 Tex. 736, 749, the court said:

"The obligation on the part of the heirs, who have taken the property out of the hands of the executor, who have elected to consider the administration as closed, would in itself be sufficient to authorize creditors of the estate to enforce their claims by suit * * *."

* * * * * *

"But when the heir takes possession of the whole estate his obligation must be commensurate with the amount received, and extend as well to debts allowed and approved, as to those which have not been recognized as debts of the succession."

It seems to us that the reasoning of said opinion is applicable here. When the heirs take possession of an estate under a deed, voidable because of the grantor-ancestor's insanity, the heirs should not be permitted to avoid payment of his debts simply by claiming under such a deed, and, under such circumstances, creditors have such an interest in said property that they should be permitted to maintain a suit to cancel the deed and look to the property for payment of their debts.

Article 3314 provides that when a person dies intestate his property shall vest immediately in his heirs, subject to the payment of his debts. In Coggin Nat. Bank v. Smith, Tex.Civ.App., 63 S.W.2d 252, it was held that for a creditor to have property coming within the purview of said statute declared a trust estate subject to the payment of debts, the law imposes

on him the burden of showing that said property belonged to the deceased debtor and was in the hands of his heirs. We think that was essentially the purpose of this suit. We know of no other way the creditors could have shown that, in equity, the property held by appellants belonged to the estate of the deceased and was subject to his debts than to bring this equitable proceeding to cancel the deed executed while he was insane. See Bethany Hospital Co. v. Philippi, 82 Kan. 64, 107 P. 530, 30 L.R.A.,N.S., 194.

In Ingersoll v. Gourley, 72 Wash. 462, 130 P. 743, 745, it was held that a creditor of the victim of a forged deed could maintain a suit to set it aside.

In Westerfeld v. Stout, Tex.Civ.App., 129 S.W.2d 478, 479 (DCJ), it was held, in an action by a creditor of a decedent against his heirs to collect a debt from decedent's property, that the creditor must allege and prove the property was in the hands of the heirs sued. We think such was the effect of appellees' case. The creditors have alleged and proved that the property is in the hands of the heirs sued and what specific property came into their hands, to wit: the property described in said deed, and that, in equity, they are holding as heirs because the deed was voidable. When they set aside the deed, appellants' possession must necessarily be as heirs. In Van v. Webb, 147 Tex. 299, 215 S.W.2d 151, 154, our Supreme Court expressed the idea as follows:

"It will be noted * * * that all heirs have conveyed to Mrs. Webb and, if the land involved was community property, she is in effect the sole distributee. * * * But the right of a creditor respecting the decedent's land in the hands of a distributee, as fixed by the provisions of Article 3314, was denominated in Blinn v. McDonald, 92 Tex. 604, 46 S.W. 787 [48 S.W. 571] (rehearing overruled 92 Tex. 604, 50 S.W. 931), as itself a statutory lien. See, also, Westerfeld v. Stout, Tex.Civ.App., 129 S.W.2d 478, Error Dismissed, judgment correct. Accordingly, under all

the facts, if the land in suit was community property it would be accurate to say that Mrs. Van has a statutory lien against it and proper for the court to award her a decree of foreclosure. She would not be entitled to a money judgment against Mrs. Webb but rather to a judgment which is in effect one in rem, subjecting the assets of Sidney Webb which may have come into Mrs. Webb's hands to the payment of the claim." (Emphasis ours.)

We do not intend to imply that title to all the homestead was so held but only the Senator's undivided one-half interest therein. The other half was inherited by appellants from their mother. At her death title vested in said heirs, subject only to the homestead rights of her surviving husband.

In Harms v. Ehlers, Tex.Civ.App., 179 S.W.2d 582 (Writ Ref.) it was held that upon the owner's death his property became a trust estate for the benefit of his creditors. Under the circumstances of this case, the Senator having died intestate, the homestead character of said property terminated because no constituent member of his family survived and his half interest in the property, but for said deed, vested in his heirs, subject to the payment of his debts. Thompson v. Kay, 124 Tex. 252, 77 S.W.2d 201. In this connection, see also Clark v. Gauntt, Tex.Com.App., 138 Tex. 558, 161 S.W.2d 270, 273, wherein it was held that a prospective heir cannot before his ancestor's death maintain a suit to adjudicate a right in property which he expects to inherit because until the ancestor dies he has no present right or interest in the property, but, that an assignment of his expectancy could be enforced, in equity, after the death of the ancestor. The reasoning of this opinion supports our conclusion that, after the Senator's death, his creditors had such an interest in the property as authorized them to maintain this suit. Upon his death the creditors had such an interest in the property as to give them a justiciable interest

in the subject matter of this suit and the equitable right to subject said property to payment of their debts upon proof that he was insane when he executed the deed. See articles 3314 and 3464; 9 Am.Jur. 356; 7 Tex.Jur. 896; 12 C.J.S., Cancellation of Instruments, § 45, p. 1015; Groesbeck v. Groesbeck, 78 Tex. 664, 668, 14 S.W. 792; Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563, 565, 196 S.W. 501; Cannon v. McDaniel, 46 Tex. 303, 316; Schiller v. Elick, 150 Tex. 363, 240 S.W.2d 997, 1000.

Appellants' third point is that the court erred in permitting the creditors to cancel the deed because the grantees were not parties to the suit. This contention is answered by the prior statement of the pleadings. As heretofore shown, the creditors did file separate petitions in which they mentioned only the administratrix and, as administratrix, Mrs. Chandler answered their petitions. Said pleadings did not purport to supersede the creditors' prior pleadings in which they sued the grantees in the deed and, as creditors, asserted the right to cancel the deed. It is evident that by filing the later petition against the administratrix alone intervenors did not intend to abandon their suit against the grantees and that the court so treated the pleadings and the case was tried accordingly. Although such an exception is not shown, the pleadings should have been amended and the cross action as to all parties asserted in one petition but, under the circumstances, appellants were not injured thereby and reversible error is not shown.

Appellants' fourth point is that the court erred in setting aside the deed on behalf of Mrs. Welborn because there was not sufficient evidence to sustain a finding that she was a creditor. The judgment was against Mrs. Welborn. The point is overruled.

Appellants contend the court erred in refusing to permit Mrs. Chandler to testify by deposition in answers to their own direct interrogatories (1) to the effect that she considered the mental condition of Senator Cunningham was "good" and

"perfectly normal" when he executed the deed to her and her brother and sister and that such conclusion was based on her personal contact with and observation of 'her father; (2) in refusing to permit her to testify by deposition in answer to direct interrogatories propounded by plaintiffs to the effect that she remembered when her father executed the deed; that she was in his room at the hospital and saw him execute the deed; that she did not consider him to be of unsound mind; that she did not notice any unusual condition or conduct; that her father did not then do anything that impressed her with the idea that he did not know what he was doing and that she considered him to be normal mentally; (3) in further refusing to permit her answers to be introduced in evidence to direct interrogatories propounded by plaintiffs that on the day her father executed the deed to the children she heard him engage in conversation with her husband, the notary public who took his acknowledgment and his nurse and that he carried on conversations with said persons which she understood and which made sense.

Appellants contend that, although the plaintiffs themselves took the deposition of said plaintiff, Mrs. Chandler, and inquired as to transactions with the deceased, that they should have been permitted on the trial to introduce her answers to their direct interrogatories relative to such matters because (1) Mrs. Chandler, as administratrix, had not yet, when said interrogatories were propounded, been made a party to the suit and (2) because intervenors propounded cross interrogatories 7 through 11 and obtained answers from Mrs. Chandler, as follows:

"Q. Cross Int. No. 7: Isn't it a fact that during the time that W. J. Cunningham was at Hendricks Memorial Hospital during his last illness that at times he suffered from delusions? Answer to Cross Int. No. 7: I have no knowledge of such things. He certainly never suffered from any delusions in my presence or to my knowledge at any time while he was in the hospital.

"Cross Int. No. 8: Isn't it a fact that W. J. Cunningham, during his last illness often talked about imaginary events? Answer to Cross Int. No. 8: No. He never talked to me or in my presence about any imaginary event.

"Cross Int. No. 9: Isn't it a fact that during his last illness that W. J. Cunningham made many irrational statements? Answer to Cross Int. No. 9: No. He did not make any irrational statements to me or in my presence or within my knowledge.

"Cross Int. No. 11: Isn't it a fact that during the last few months of W. J. Cunningham's life that there were numerous occasions when he failed to recognize old acquaintances? Answer to Cross Int. No. 11: Not that I know of. He never failed to recognize my husband or me when we went into his room until the morning of the day he died which was September 3, 1952."

Article 3716 provides that in actions by or against administrators or heirs, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the intestate, unless called to testify thereto by the opposite party. The fact that Mrs. Chandler, who was then a party to the suit as an original plaintiff and as a defendant to intervenors' cross action against her and her brother and sister to cancel the deed, had not yet been made a party as administratrix, does not control the answer to this question. We think she was then, in effect, being sued as an heir, the substance of intervenors' suit being that the deed to the children was voidable and should be cancelled and that they were holding the property as heirs, subject to the payment of the debts of the deceased. However, regardless of this question, when the plaintiffs, who are appellants, offered to

introduce her answers to the direct interrogatories propounded by themselves, she was then a party to the suit as administratrix. Her capacity to testify is to be determined as of the time her answers to plaintiffs' direct interrogatories were offered in evidence, not when her deposition was taken.

"The existence of the disqualifying interest must be determined as of the time the testimony sought to be excluded is offered * * *.". Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 825, 172 A.L.R. 707.

Appellants further contend that Mrs. Chandler's answers to the direct interrogatories propounded by them were admissible because appellees, by propounding said cross interrogatories, called her to testify within the meaning of Article 3716. The mere taking of the deposition of the opposite party has been held by our Supreme Court to constitute the calling of the adversary to testify within the meaning of the statute. Allen v. Pollard, 109 Tex. 536, 212 S.W. 468, 469. We see no reason why said rule should not be applicable to appellants who called one of their own to testify by taking her deposition and propounding direct interrogatories relative to transactions by the witness with the deceased and thereby eliciting testimony which clearly was not admissible under the statute. We think the general rule with reference to cross interrogatories should be applied here. That rule is stated in 58 Am.Jur. 212, as follows:

"* * * if cross examination is restricted to matters brought out on direct examination of the witness it does not amount to incompetency of the witness with respect to transactions or conversations with the decedent. The disqualification is not waived by cross examining a witness on a matter collateral to his direct testimony and in the course thereof asking him as to a statement of the deceased which he denies, and when the trial court erroneously overrules

an objection to the admission of evidence as involving a conversation or transaction with a decedent, the party making such objection does not ordinarily waive his rights under the statute by cross examining the witness on the same matters."

To manifest reversible error appellants must show that the disqualification of said witness was waived by the appellees by bringing out new matter relating to transactions with the deceased concerning which she had not testified on direct examination. The record before us does not show that all of the direct interrogatories propounded by appellants to Mrs. Chandler and her answers thereto are a part of the record. But, if it did, it is not shown that the cross examination brought out new matter concerning which the witness had not testified in answer to plaintiffs' direct interrogatories but, to the contrary, indicates that she was cross examined only on matters collateral to her direct testimony.

In Jones-O'Brien, Inc., v. Loyd, Tex. Civ.App., 125 S.W.2d 684, 690 (Writ Dis.), this court said:

"It is not shown that by the cross-examination appellant made the witness its own or extended the inquiry beyond the scope of the direct examination by which the testimony was elicited."

The general rule is stated in 159 A.L.R. 417 as follows:

"The cross examination of a witness as to transactions or conversations with a deceased party was said in the original annotation not to amount to a waiver of the incompetency of the witness with respect to such matters, where the cross examination is restricted to the matters brought out on the direct examination of the witness."

We hold that Mrs. Chandler was not "called to testify" by appellees. Certainly the rule should not be more strictly ap-

plied to cross interrogatories in a deposition than to cross examination on the trial. We have considered the authorities cited by appellants. If they hold to the contrary, they are not in accord with said general rule and we decline to follow them. See also Jones, Evidence, Third Edition, Sec. 784, page 1215; 70 C.J. 373; Wyatt v. Chambers, Tex.Civ.App., 182 S.W. 16, 19; Lehman v. Howard, Tex.Civ.App., 133 S.W.2d 800, 802; Jackson v. Jones, 74 Tex. 104, 11 S.W. 1061; Perdue v. Perdue, 110 Tex. 209, 217 S.W. 694; White v. Smith, Tex.Civ.App., 276 S.W.2d 359, 364 (Writ Dis.).

All of appellants' points have been considered and are overruled. We conclude that reversible error is not shown. The judgment is affirmed.

LONG, J., not sitting.